# UNITED STATES OF AMERICA *v.* LOUISVILLE & NASHVILLE RAILROAD COMPANY.

## APPEAL FROM THE COMMERCE COURT.

No. 39. Argued February 24, 25, 1913.—Decided December 7, 1914.

The very purpose for which the Interstate Commerce Commission was created was to bring into existence a body which from its peculiar character would be most fitted to primarily decide whether from facts, disputed or undisputed, in a given case preference or discrimination existed.

Where the evidence is undisputed and shows a discrimination between localities, a finding by the Interstate Commerce Commission that such discrimination is undue is a finding of fact which is not subject to review by the Commerce Court.

*Quære,* and not now decided, whether the method adopted by the Interstate Commerce Commission of considering, and basing its opinion upon, matter gathered in its general investigations regarding the subject-matter in controversy, but not produced upon the particular proceeding against particular carriers in which an order is made requiring them to desist from practices complained of in that proceeding, amounts to a denial of a hearing and results in want of due process of law.

After the amendment to § 4 of the Interstate Commerce Act by the act of June 18, 1910, the authority of the carriers to primarily determine for themselves the propriety of charging a higher rate for a shorter than for a longer distance ceased to exist and was taken from them and primarily vested in the Commission.

In this case the rates and allowances involved and the grain reshipping privilege at Nashville are governed by § 4 of the act. *Intermountain Rate Cases,* 234 U. S. 476.

The application of the principle of public policy embodied in § 4 of the Interstate Commerce Act is to be determined by the substance of things and not by names; otherwise the statute would be wholly inefficacious.

THE facts, which involve the jurisdiction of the Commerce Court to review orders of the Interstate Commerce Commission, are stated in the opinion.

*Mr. Solicitor General Bullitt* for the United States:

The finding of the Interstate Commerce Commission that the reshipping privilege constituted an undue preference in favor of Nashville had substantial evidence to support it; is a finding of fact; and is not open to reexamination.

There is substantial evidence to support the finding that the practice unduly prefers Nashville over Atlanta and other Georgia towns.

The Commission's finding that an undue preference exists is a finding of fact, not of law, and therefore is conclusive here. *Balt. & Ohio R. R.* v. *United States*, 215 U. S. 481; *Int. Com. Com.* v. *Ill. Cent. R. R.*, 215 U. S. 452; *Int. Com. Com.* v. *D., L. & W. R. R.*, 220 U. S. 235; *Int. Com. Com.* v. *C., R. I. & P. Ry.*, 218 U. S. 88; *Int. Com. Com.* v. *Louis. & Nash. R. R.*, 227 U. S. 88.

The theory of the Commerce Court would practically destroy the Interstate Commerce Commission.

Where the facts are undisputed it is essentially one of the functions of the Interstate Commerce Commission to determine what is the correct order to make, and its conclusion is binding unless based on some mistake of law.

The preference given to Nashville over Atlanta and other Georgia towns cannot be justified by the alleged fact that the reshipping privilege was originally granted to meet water competition or that such water competition still exists.

The evidence is by no means undisputed that the reshipping privilege was originally installed to meet the water competition.

The mere fact that the railroads may have been justified in 1872 in granting Nashville a reshipping privilege is absolutely no evidence that it is now lawful. *Armour Packing Co.* v. *United States*, 209 U. S. 56; *L. & N. R. R.* v. *Mottley*, 219 U. S. 467.

The mere potentiality of water competition does not

justify a preferential regulation or practice. The water competition which will justify a preference must be actual and substantial; not merely conjectural. *Int. Com. Com.* v. *Louis. & Nash. R. R.*, 190 U. S. 273, 282; *Louis. & Nash. R. R.* v. *Behlmer*, 175 U. S. 648, 673.

Assuming, however, that the river competition is controlling to-day, that fact does not give the carrier a right to meet such competition by means of the reshipping privilege where, as here, a non-preferential though less profitable means was open to the carrier. *E. T., V. & G. R. R.* v. *Int. Com. Com.*, 181 U. S. 1, 18; *Int. Com. Com.* v. *Alabama Midland Ry.*, 168 U. S. 144, 167; *Louis. & Nash. R. R.* v. *Behlmer*, 175 U. S. 648, 673.

Water competition to an intermediate point in a through journey does not justify any preference for any portion of the journey except between the competitive points.

The ruling of the Commission was inherently correct.

*Mr. Charles W. Needham* for the Interstate Commerce Commission.

*Mr. William A. Wimbish* for Duncan & Co., *et al.*

*Mr. Albert S. Brandeis*, with whom *Mr. Henry L. Stone* was on the brief, for Louisville & Nashville Railroad Co.:

The order of the Commission of the ninth day of June, 1911, should be annulled and set aside, because it was based upon a consideration of evidence, matters, and things not found in the record or introduced at the hearings.

The reshipping privilege at Nashville having been compelled by the controlling influence of the competition of Cumberland River, which does not exist at the Georgia points, the advantage and preference thereby given Nashville are not undue and the discrimination is not unjust.

There is no undue discrimination in maintaining the

reshipping practice at Nashville, because it is compelled and justified by circumstances and conditions prevailing there which do not prevail elsewhere in the southeast.

It is not within the province of the Commission to overcome the natural advantages which Nashville, owing to its geographical situation and water transportation, has over Atlanta and the other complaining points with respect to grain movements into the southeastern territory.

There was no valid basis for the Commission's order and the same should be set aside and annulled as wholly beyond its powers.

The order of the Commission is void on its face, because it necessarily results in a discrimination against Nashville in comparison with Ohio River crossings.

In support of these contentions, see *Ashland Brick Co.* v. *Southern Ry.*, 22 I. C. C. 115, 121; *Brewer* v. *C. G. W. Ry.*, 84 Fed. Rep. 268; *Bultie Milling Co.* v. *C. & A. R.*, 15 I. C. C. 351; *Chattanooga* v. *Southern Ry.*, 10 I. C. C. 134; *Duncan* v. *N. C. & St. L. Ry.*, 16 I. C. C. 590; *Duncan & Co.* v. *N. C. & St. L. Ry.*, 21 I. C. C. 186, 193; *E. Tenn. V. & G. Ry.* v. *Int. Com. Com.*, 181 U. S. 1, 12; *Enterprise Mfg. Co.* v. *Georgia R. R.*, 12 I. C. C. 451; *In re Substitution of Tonnage*, 18 I. C. C. 280; *Int. Com. Com.* v. *Un. Pac. R. R.*, 222 U. S. 541; *Int. Com. Com.* v. *Louis. & Nash. R. R.* (decided Jan. 20, 1913); *Int. Com. Com.* v. *Diffenbaugh*, 222 U. S. 42; *Int. Com. Com.* v. *Ala. Mid. R. R.*, 168 U. S. 141, 171, 175; *Int. Com. Com.* v. *Balt. & Ohio R. R.*, 43 Fed. Rep. 37; *Int. Com. Com.* v. *Chicago G. W. Ry.*, 209 U. S. 108, 118; *Int. Com. Com.* v. *C., R. I. & P. Ry.*, 218 U. S. 88, 102; *Louis. & Nash. R. R.* v. *Behlmer*, 175 U. S. 648; *Lake Cargo Coal Case*, 22 I. C. C. 604, 612, 613; *Louis. & Nash. R. R.* v. *United States*, 197 Fed. Rep. 58; *Minneapolis* v. *G. Nor. Ry.*, 4 I. C. C. 230; *Peavy & Co.* v. *Int. Com. Com.*, 176 Fed. Rep. 409; *Quimby* v. *Maine Central R. R.*, 13 I. C. C. 246; *Spokane* v. *Nor. Pac. R. R.*, 21 I. C. C. 400; *Squire* v. *Mich.*

*Cent. R. R.*, 4 I. C. C. 515; *Traffic Bureau of St. Louis v. C., B. & Q. R. R.*, 14 I. C. C. 317, 331, 510.

*Mr. K. T. McConnico*, with whom *Mr. John A. Pitts* and *Mr. Lee Douglas* were on the brief, for the Nashville Grain Exchange and the Nashville Board of Trade.

*Mr. Merrel P. Callaway* and *Mr. R. Walton Moore* filed a brief for the Nashville, Chattanooga & St. Louis Railway.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This case involves a controversy as to the legality of a reshipping privilege permitted at Nashville by the carriers who are parties to the record, described by the court below as follows:

"On grain, grain products, and hay shipped to Nashville by rail from or through Ohio or Mississippi River crossing points such as Louisville, Evansville, Hickman, Paducah, Cairo, etc., the L. & N. and N. C. & St. L. charge the full local freight rate from said crossing points to Nashville. These shipments may then be stopped at Nashville for a period not exceeding six months, during which time they may be rebilled or reshipped to destinations in southeastern and Carolina territory; and on such reshipments so rebilled the freight charges into and out of Nashville are readjusted so that the total transportation charge on any one shipment from any given Ohio or Mississippi River crossing, via Nashville, to any given destination in said territory, shall exactly correspond with the transportation charge legally assessable on that shipment had it been billed and moved through from its point of origin at the said Ohio or Mississippi River crossing points to its final destination without having been stopped in transit at Nashville."

We adopt the history of the litigation in so far as it relates to the privilege in question contained in the brief on the part of the United States.

"1. In 1908 certain Georgia grain dealers complained to the Interstate Commerce Commission of various traffic practices at Nashville; after taking voluminous proof, the Commission, on June 24, 1909, held the reshipping privilege illegal and ordered it stopped.    (16 I. C. C. 590, 595).

"2. The Commission, on its own motion, postponed the effective date of the order, so that it might institute a country-wide investigation of the practices involved; and on May 3, 1910, the Commission, after a hearing at which about 150 shippers and carriers were represented by counsel, reported that its former order abolishing the reshipping privilege *in toto* was too strict, and remitted the matter to the carriers and shippers to frame regulations that would prevent any rebating under the privilege (18 I. C. C. 280) and, pursuant thereto, new and satisfactory regulations were adopted to safeguard the reshipping privilege (21 I. C. C. 183, 188).

The previous order of June 24, 1909, which had abolished the reshipping privilege at Nashville was vacated and the Commission thereafter again considered the controversy between the grain dealers of Georgia and the Nashville dealers and carriers.

"3. . . . On June 9, 1911, the Commission delivered a Supplemental Report, holding that the action of the carriers in granting the reshipping privilege to Nashville, while refusing it to Atlanta, etc., was an undue and unreasonable preference to Nashville, in violation of section 3 of the Interstate Commerce Act.    (21 I. C. C. 186.) The Commission entered an order in accordance therewith.

"4. The Nashville Board of Trade, the L. & N. R. R. Co., and the N. C. & St. L. R. R. Co. thereupon sued in the Commerce Court to enjoin the enforcement of the order; the two suits were consolidated."    The record evi-

dence .before the Commission was introduced and some additional testimony was taken.

The Commerce Court, finding that there was no conflicting or disputed evidence concerning the origin and character of the reshipping privilege, concluded that whether such privilege was an undue preference was not a matter of fact but a question of law upon which it was its duty to reach an independent conclusion. The court, therefore, among other considerations because the privilege was of long standing and was justified by water competition at Nashville, declared it to be not unlawful and not preferential. A peremptory injunction was allowed restraining the enforcement of the order of the Commission. And the correctness of this action is the question here for decision.

In view of the doctrine announced in *Interstate Com. Com.* v. *Illinois Cent. R. R.*, 215 U. S. 452; *Interstate Com. Com.* v. *Delaware, L. & W. R. Co.*, 220 U. S. 235; *Interstate Com. Com.* v. *Louisville & Nashville R. R.*, 227 U. S. 88, it plainly results that the court below, in substituting its judgment as to the existence of preference for that of the Commission on the ground that where there was no dispute as to the facts it had a right to do so, obviously exerted an authority not conferred upon it by the statute. It is not disputable that from the beginning the very purpose for which the Commission was created was to bring into existence a body which from its peculiar character would be most fitted to primarily decide whether from facts, disputed or undisputed, in a given case preference or discrimination existed. *East Tenn. &c. Ry. Co.* v. *Interstate Com. Com.*, 181 U. S. 1, 23–29. And the amendments by which it came to pass that the findings of the Commission were made not merely *prima facie* but conclusively correct in case of judicial review, except to the extent pointed out in the *Illinois Central* and other cases, *supra*, show the progressive evolution of the legislative purpose and the

inevitable conflict which exists between giving that purpose effect and upholding the view of the statute taken by the court below.  It cannot be otherwise since if the view of the statute upheld below be sustained, the Commission would become but a mere instrument for the purpose of taking testimony to be submitted to the courts for their ultimate action.

While these conclusions demonstrate the error in the action of the court below, that result does not authorize us to reverse and give effect to the order of the Commission without going further, since it must be determined whether the action of the Commission was repugnant to the Constitution, in excess of the powers which that body possessed, or, what is equivalent thereto, was wholly unsustained by proof,—questions which the court below failed to pass upon because of the erroneous conception in which it indulged concerning its own powers.  But if it were essential for us to consider these questions we should be confronted with a grave situation arising from the serious doubt which would exist whether it would be possible for us to do so in view of the manner in which the Commission had discharged its functions, and whether that method had not in and of itself amounted to a denial of a hearing and thus resulted in want of due process of law.  See *Inter-State Com. Com.* v. *Louisville & Nashville R. R., supra,* at p. 91, and the paragraph from the answer of the Commission filed in the court below which is in the margin.[1]

---

[1] "That in said investigation and in arriving at its decision therein this respondent, as in duty bound under the law, weighed and considered all the facts and arguments presented by the petitioners herein, by other carriers, and all other parties to said proceeding; that in forming its opinion and arriving at its conclusions this respondent, exercising its administrative functions and powers, considered all pertinent facts and matters set forth in many reports and statistics on file with said respondent, together with other facts coming to the knowledge of this respondent in the performance of its duties and functions prescribed and set forth in the act to regulate commerce and the amendments

We pass this subject by, however, because its consideration is not essential to determine whether the Commission was right in prohibiting a continuance of the rebilling privilege, since we are of opinion that even if the allowance of such rebilling privilege when originally made was authorized by the statute and was therefore not a preference, the right to continue it had been expressly prohibited by statute until on application made to the Commission its consent to that end was given. The express or implied statutory recognition of the authority on the part of carriers to primarily determine for themselves the existence of substantially similar circumstances and conditions as a basis of charging a higher rate for a shorter than for a longer distance within the purview of § 4 of the Act to Regulate Commerce and the right to make a rate accordingly to continue in force until on complaint it was corrected in the manner pointed out by statute, ceased to exist after the adoption of the amendment to

---

thereto pertaining to the privileges of rebilling and reshipping; that from said reports and tariffs it appears that said rebilling and reshipping privileges exist at many interior points where no water competition obtains; it is therefore not competent, nor is it relevant, for said petitioners to allege that any particular fact or facts before this respondent in said proceeding were uncontradicted or conclusive in favor of the petitioners' contention; nor can the petitioners by judicial proceedings ascertain each and all the facts, circumstances, and conditions in regard to said transportation that were necessarily and properly considered by and which aided this respondent in arriving at its conclusion that said practice of rebilling and reshipping said products from Nashville was unduly and unreasonably discriminatory.

"This respondent denies that there is, or can be, under the law, any complete record of all the evidence, facts, and circumstances before the Commission in determining that this, or any other practice by carriers, is unduly and unjustly discriminatory as between localities or persons, and respondent is advised and so alleges that the determination of said question, as to whether said admitted discrimination is undue and contrary to the provisions of said act to regulate commerce, is one wholly and exclusively within the jurisdiction of this respondent."

§ 4 by the act of June 18, 1910, c. 309, 36 Stat. 539, 547. This results from the fact that by the amendment in question the original power to determine the existence of the conditions justifying the greater charge for a shorter than was exacted for a longer distance, was taken from the carriers and primarily vested in the Interstate Commerce Commission, and for the purpose of making the prohibitions efficacious it was enacted that after a time fixed no existing rate of the character provided for should continue in force unless the application to sanction it had been made and granted. *Intermountain Rate Cases*, 234 U. S. 476. If then it be that the rebilling privilege which is here in question, disregarding immaterial considerations of form and looking at the substance of things, was, when originally established, an exertion of the authority conferred or recognized by § 4 of the act, as there is no pretense that permission for its continuance had been applied for as required by the amendment and the statutory period for which it could be lawfully continued without such permission had expired, it follows that its continued operation was manifestly unlawful and error was committed in permitting its continuance under the shelter of the injunction awarded by the court below. To determine whether § 4 is applicable requires a very brief consideration of the uncontroverted situation from which the rebilling privilege arose and upon the existence of which it depended. It is undoubted that for many years the Ohio River was a basing point for rates, and traffic moving from the producing regions of the northwest to the consuming regions in the southeast bore rates from Ohio River points to destination which because of competition were lower from Ohio River points to the farther points of consumption than were charged from intermediate (nearer) points between the Ohio River and such points of consumption. This lesser charge for the longer than for the shorter distance as to the traffic in question was

typically illustrative of the condition contemplated by
§ 4 of the Act to Regulate Commerce. As to Nashville,
however, this idiosyncracy arose: The carriers from the
Ohio River to Nashville instead of giving the lesser rate
for the longer distance from the Ohio River to Nashville
than was asked for intermediate points, maintained a
local and proportionate rate for grain and other north-
western products from the Ohio River to Nashville,
although giving a lower rate for the longer haul from the
Ohio River to points in the south or southeast territory
beyond Nashville. Upon the basis, however, that there
was water competition between the Ohio River and
Nashville if not for other reasons, as to which we think it is
not relevant to inquire, there was granted by the carriers
to shippers of grain at Nashville the rebilling privilege
which we have at the outset described. That is to say,
shippers of grain at Nashville on establishing the receipt
at Nashville of grain from Ohio River points equal in
quantity to grain proposed to be shipped, received an
allowance on the local rate from Nashville to the point of
destination which made the rate on the shipment equiv-
alent to what it would have been had the grain originally
moved from the Ohio River point to its ultimate point of
destination and not stopped at Nashville at all. We quote
a clear illustration of the operation of the privilege taken
from the argument at bar of one of the carriers:

"For example, the local rate on grain from Evansville,
on the Ohio River, to Nashville, is 10 cents per 100
pounds, and the local rate from Nashville to Atlanta is
17 cents per 100 pounds. The joint rate from Evansville
to Atlanta is 24 cents per 100 pounds, or 3 cents less than
the sum of the locals. Under the reshipping practice the
joint rate of 24 cents is protected when the shipment has
been stopped in transit at Nashville. The local rate of
10 cents from Evansville to Nashville having been paid
at the time of the shipment into Nashville, an adjustment

of the total transportation charge is made when the reshipment to Atlanta occurs, so that the shipper in the end pays upon the shipment the joint rate instead of the combination of local rates into and out of Nashville."

When the result of this allowance is understood there seems to be no room for serious controversy that the right to continue the privilege is controlled by § 4 of the act. The actual shipment from Nashville must either be considered as a movement from Nashville, irrespective of the rate which would have been applicable on a through shipment from an Ohio River point to the same point of destination, or it must be treated by a fiction as one moving from an Ohio River point to the same destination. If the first, then clearly the allowance made of a rate from Nashville to the point of destination was a lesser charge for the longer distance hauled as to such grain than was charged for the shorter distance as to any other grain moving from Nashville to intermediate points or from such points to places further on and came clearly within the grasp of § 4. If on the other hand it be imagined to be a shipment from the Ohio River crossing to the point of destination upon the theory that the traffic before stoppage at Nashville originated at the Ohio River point, then exactly the same conditions would be reproduced, since the charge as the result of the reduction made was the equivalent of a lesser rate for the longer than for the shorter distance, which, as we have stated, was the prevailing system from Ohio River crossings to points of destination in the southeast.

It is true that in argument it was said that the question here is whether there was a preference or discrimination under §§ 2 and 3 of the act and not an inquiry under § 4 and that a distinction between the various sections has been recognized. It has, indeed, been held that the provisions of §§ 2, 3 and 4 of the act being in *pari materia* required harmonious construction and therefore they

should not be applied so that one section destroyed the others and consequently that a lesser charge for a longer than for a shorter distance permitted by § 4 could not for such reason be held to be either a preference or discrimination under §§ 2 or 3. *Louisville & Nashville R. R.* v. *Behlmer,* 175 U. S. 648; *East Tenn. &c. Ry.* v. *Interstate·Com. Com.,* 181 U. S. 1. But the rule which requires that a practice which is permitted by one section should not be prohibited upon the theory that it is forbidden by another gives no support to the unwarranted assumption that that may be permitted which is devoid of all sanction and indeed is in direct conflict with all three of the sections,—a result clearly arising in the case before us in consequence of the amendment of § 4. Indeed when the evil which it may be assumed conduced to the adoption of the amendment of § 4 and the remedy which that amendment was intended to make effective are taken into view (see *Intermountain Rate Cases, supra*), it would seem that the case before us cogently demonstrates the applicability of the amendment to the situation. And it needs no argument to demonstrate that the application of the principle of public policy which the statute embodies is to be determined by the substance of things and not by names, for if that were not the case the provisions of the statute would be wholly inefficacious, as names would readily be devised to accomplish such a purpose.

It follows from what we have said that the court below was wrong in enjoining the order of the Commission and on the contrary should have dismissed the complaint. The case will therefore be appropriately remanded to enable a decree to that effect to be entered, without prejudice, however, to the right of the carriers to apply to the Commission to be relieved from the operation of the provisions of § 4 of the Interstate Commerce Act if they are so advised.

*Reversed.*

MR. JUSTICE PITNEY concurs in the result.