PHILADELPHIA & R. RY. CO. v. UNITED STATES et al.

(District Court, E. D. Pennsylvania. January 16, 1915.)

No. 1307.

1. COMMERCE ☞88—INTERSTATE COMMERCE COMMISSION—ORDERS—CONFORMITY TO COMPLAINTS.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (Comp. St. 1913, § 8565), making it unlawful for any common carrier to subject any particular locality to any undue or unreasonable prejudice or disadvantage, section 13 providing that any person, etc., complaining of anything done or omitted by any common carrier in contravention of that act, may apply to the Commission by petition, and giving the Commission the same powers on its own motion as when appealed to by complaint or petition, and section 15 providing that when the Commission shall be of the opinion that any practices of any carrier are unjust, unreasonable, unjustly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of that act, it may make an order that such carrier or carriers shall cease and desist from such violations, where a manufacturer of cement at Evansville filed a complaint charging that a carrier's rate on cement from that point to Jersey City discriminated against it and against Evansville, and the Commission, having found that such rate discriminated against Jersey City, granted a rehearing, and upon the rehearing made a like finding and ordered the carrier to cease charging such rate, its order was not in excess of the Commission's power, because the complaint was not made by Jersey City nor by any citizen thereof as the Commission is more of an administrative than a judicial tribunal, and is not restricted in its procedure by the technical rules prevailing in judicial tribunals nor restricted in its finding or its order to the precise point in dispute presented by the pleadings, but may extend its inquiry and affix its order to other matters germane to the matter in inquiry and involved in the consideration of the principal point in controversy, provided the parties are not taken by surprise and are afforded an opportunity to present evidence, and the carrier was afforded an opportunity on the rehearing, if not on the original hearing, to defend against the charge of discrimination against Jersey City, while discrimination against Jersey City, by reason of a rate between Evansville and

that point, was necessarily related to the question of discrimination against Evansville by reason of the same rate.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. ☞88.]

2. COMMERCE ☞88—INTERSTATE COMMERCE COMMISSION—POWERS—DISCRIMINATORY RATES.

Where a railway company united with other companies carrying cement from a particular district in fixing relatively uniform rates to all points east and south, except Jersey City, and charged the same rate as such other companies to Jersey City on cement destined for transshipment to coastwise points, but charged a higher rate for cement shipped to Jersey City for local consumption, an order finding that this last-mentioned rate discriminated against Jersey City, and ordering the company to cease charging such discriminatory rate, was not beyond the powers of the Interstate Commerce Commission on the theory that it based a finding of discrimination on the mere fact that such railroad company did not conform to the rates charged by competing companies, as the discrimination consisted in the railroad company's own act in excepting Jersey City from the advantages of relatively equal rates accorded all other localities, especially as the function and jurisdiction of the Commission is the regulation of commerce and not the regulation of railroads, except in so far as they are instruments of commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. ☞88.]

In Equity. Bill by the Philadelphia & Reading Railway Company against the United States and another, to annul an order of the Interstate Commerce Commission. Bill dismissed.

William L. Kinter and Henry S. Drinker, Jr., both of Philadelphia, Pa., for plaintiff.

Joseph W. Folk, of St. Louis, Mo., and Charles W. Needham, of Washington, D. C., for Interstate Commerce Commission.

Blackburn Esterline, Special Asst. Atty. Gen., for the United States.

George W. Aubrey, of Allentown, Pa., and Chester N. Farr, Jr., and William A. Glasgow, Jr., both of Philadelphia, Pa., for Allentown Portland Cement Co.

Before HUNT and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. By the prayer of the bill filed in this case, the court is asked to revoke and annul an order made by the Interstate Commerce Commission against the complainant and other carriers, commanding that they cease and discontinue certain unreasonable prejudices and disadvantages found to have been occasioned certain localities by tariffs imposed, under the following circumstances:

The cement manufacturing plant of the Allentown Portland Cement Company is situate at Evansville in a cement region in Pennsylvania known as the "Lehigh District." Located elsewhere in the same district are many other cement plants. The mill of the Allentown Company is served only by the Philadelphia & Reading Railway Company, which, excepting at Evansville, serves no other cement mills in the district. The other mills are served by other carriers, which do not serve the mill of the Allentown Company.

The Lehigh district is treated by all the carriers as a "locality," and all the carriers serving all the mills located therein participate in making and maintaining relatively the same rates for transporting cement from mills variously situated in the district to destinations east and south, excepting to Jersey City. With respect to this exception, the several carriers, which serve the mills of the Lehigh district, other than the mill of the Allentown Company, charge a rate of 80 cents per ton from their respective points of shipment to Jersey City; and the Reading Company, which serves exclusively the mill of the Allentown Company, charges two rates from the plant at Evansville to Jersey City, namely, 80 cents per ton for cement destined for transshipment to coastwise ports, and $1.35 a ton for cement intended for local consumption.

The Allentown Company filed a petition with the Interstate Commerce Commission alleging that the rate of $1.35 from Evansville to Jersey City for cement for local consumption charged by the Reading Company was, first, unjust and unreasonable; and, second, that it unduly discriminated against it and against the locality in which its plant was located. No contention was made that, in fixing rates for cement from Evansville and from other points upon its line, the Allentown Company or the locality of Evansville was thereby discriminated against. The contention was that in participating with the other carriers serving other mills in the same district in making and maintaining for the district the same relative rates to all competing points, save Jersey City, the Reading Company by this exception discriminated against the Allentown Company and against Evansville as the locality in which its plant was situate. The Commission did not find the rate unreasonable, nor did it expressly find that by the rate the Allentown Company or the locality of Evansville was discriminated against, although in its report the Commission expressed the opinion that by the rate the Allentown Company was caused to labor under a prohibitory disadvantage in marketing its product in Jersey City in competition with other mills in the same manufacturing district, but found that, by the rate, Jersey City was prejudiced and discriminated against. Upon the report of the Commission, the Reading Company filed a motion for a rehearing. The motion was allowed, and a further hearing had, at which further testimony was taken. Upon the rehearing, the Commission made a like finding that, by the rate imposed, the locality, not of Evansville, but of Jersey City, was prejudiced and discriminated against, and upon that finding based the order now before us for review, directing the Reading Company to cease and desist charging the rate complained of and to establish another that would avoid the prejudice and discrimination occasioned by the former.

It is conceded that findings of fact by the Interstate Commerce Commission are not reviewable, but it is urged by the complainant that the matters here submitted are questions of law, which involve the power of the Commission to perform the act complained of, and, when specified, are: First. (a) Whether the Commission has power to make a finding of discrimination against a locality, when that locality or one of its citizens is not a complainant. (b) Whether, under the pleadings, the Commission has power to find discrimination against a locality not therein specially designated as the locality discriminated against. And,

Second. Whether undue discrimination against a locality, as contemplated by the statute, is restricted to discrimination in rates by a carrier between points exclusively upon its own line, entirely without regard to its effect upon commerce or the movement of traffic, or extends to a discrimination against a locality caused by a carrier fixing a rate from one point to another on its own line that is relatively different from rates which it and other carriers participate in making for competing points upon the lines of all of them.

[1] First. The order in controversy was made under section 3 of the act to regulate commerce, which, among other things, provides:

"That it shall be unlawful for any common carrier * * * to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

The manner of invoking the protection of this provision of the act appears in sections 13 and 15, as follows:

"That any person, firm, corporation, company or association, or any mercantile, agricultural, or manufacturing society or other organization, or any body politic or municipal organization, or any common carrier, complaining of any thing done or omitted to be done by any common carrier * * * in contravention of the provisions thereof, may apply to the said Commission by petition, * * * whereupon * * * such common carrier, who shall be called upon to satisfy the complaint, or to answer the same. * * *"

It is further provided that:

"The said Commission shall have the same powers and authority to proceed with any inquiry instituted on its own motion as though it had been appealed to by complaint or petition under any of the provisions of this act, including the power to make and enforce any order or orders in the case, or relating to the matter or thing concerning which the inquiry is had excepting orders for the payment of money. No complaint shall at any time be dismissed because of the absence of direct damage to the complainant."

Section 15, as amended, provides that:

"Whenever, after a full hearing upon a complaint made as provided in section 13 of this act, or after full hearing under an order for investigation and hearing made by the Commission on its own initiative (either in extension of any pending complaint or without any complaint whatever), the Commission shall be of opinion that any * * * practices whatsoever of such carrier or carriers * * * are unjust or unreasonable or unjustly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of any of the provisions of this act, the Commission is hereby authorized and empowered to * * * make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist. * * *"

The question whether the Interstate Commerce Commission has power to find discrimination against one locality in a proceeding instituted upon complaint, charging discrimination against another locality, depends, first, upon the related circumstances of the case, and, second, upon the purpose for which the Commission was created and the mischief which it was intended to remedy.

The Interstate Commerce Commission, while possessing quasi judicial powers, is primarily an administrative body. From the legislative and judicial history of the act it appears that the purpose of the act under which the body was created "is to promote and facilitate com-

merce by the adoption of regulations to make charges for transportation just and reasonable, and to forbid undue and unreasonable preferences and discriminations." Texas & Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 233, 16 Sup. Ct. 666, 680 (40 L. Ed. 940). In the case of United States v. Louisville & Nashville Railroad Co. et al., 235 U. S. 314, 35 Sup. Ct. 113, 59 L. Ed. ——, decided December 7, 1914, the Supreme Court of the United States, speaking through Mr. Chief Justice White, said:

"It is not disputable that from the beginning the very purpose for which the Commission was created was to bring into existence a body which, from its peculiar character, would be most fitted to primarily decide whether from facts, disputed or undisputed, in a given case, preference or discrimination existed, * * * and the amendments by which it came to pass that the findings of the Commission were made not merely prima facie but conclusively correct, in case of judicial review, * * * show the progressive evolution of the legislative purpose."

The promotion and facilitation of commerce being the purpose for which the statute was enacted and the Commission created, with power conclusively to determine the existence of prejudice and discrimination, the Supreme Court has from time to time recognized the administrative character of the Commission as the instrument to effectuate that purpose. The Commission, therefore, being more of an administrative than a judicial tribunal, is not restricted in its procedure by the technical rules that prevail in tribunals that are entirely judicial. In its capacity of a judicial tribunal, the Commission may decide questions between shippers and carriers upon complaint filed by one or the other in proceedings regularly instituted by one against the other, or, within its broader sphere, it may regulate commerce in respect to a matter in which there may exist no distinct parties in controversy, or as a consequence of which damage may not be claimed or sustained by any party to the investigation. It may institute of its own motion an inquiry as to a matter within its jurisdiction, and make and enforce its orders as in a proceeding instituted by an injured party. With such power, and with all the parties before it in a proceeding instituted by petition, as the one under consideration, it is not contemplated that the Commission, acting within its administrative sphere, should be restricted in its finding or its order to the precise point in dispute presented by the pleadings, as in an action at law, but may extend its inquiry and affix its order to other matters developed in the proceeding, which may be germane to the matters in inquiry, and which are involved in the complaint and included in the consideration of the principal point in controversy, provided always that the parties are not taken by surprise, and to them is afforded an opportunity to present evidence upon which the Commission may make a finding concerning both the original and the related matter. New York Central & H. R. R. Co. v. Interstate Commerce Commission (C. C.) 168 Fed. 131, 138.

In the case under consideration the defendant was summoned to answer and defend the charge that the rate complained of was a rate on cement between Evansville and Jersey City prejudicial to the locality of the former. It has been held by the Supreme Court that:

"In considering whether any particular locality is subjected to an undue preference or disadvantage, the welfare of the communities occupying the lo-

calities where the goods are delivered is to be considered as well as that of the communities which are in the locality of the place of shipment." Texas & Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 233, 16 Sup. Ct. 666, 680 (40 L. Ed. 940).

Whether or not the defendant was conversant with this rule and was unprepared to defend the charge of discrimination against Jersey City by the rate in controversy, it was aware of the Commission's view upon its first report, and then was given an opportunity to defend, and did defend, on a rehearing, against the charge of discrimination against Jersey City. Therefore, while the defendant may not have entered the proceeding with a knowledge of all it had to meet, it was afforded an opportunity to meet all that was charged against it before the hearing was closed and the final order made. Furthermore, the record fails to disclose any objection by the defendant to the scope of the inquiry.

The petition in the proceeding instituted by the Allentown Company, while charging discrimination by the defendant against it and the locality in which its plant was situate, nevertheless charged that the rate imposed for the shipment of cement from Evansville to Jersey City was the discriminatory act which formed the basis of its complaint. The rate was one imposed for the transportation of cement from one locality to the other, in the first of which existed the seller, and in the latter of which resided the purchaser. The defendant was notified that it was called upon to defend that rate; and, although discrimination is charged against the former locality, it is difficult to see, in a case like this, how discrimination against one locality will not correspondingly affect unjustly the other—that is, it is difficult to see how a discrimination against the purchaser at one point is not a discrimination against the seller at the other point. When discrimination respecting traffic between the two points is the only question in issue, the carrier cannot complain that it was not afforded an opportunity to defend the tariff imposed, nor to defend against a possible finding of discrimination against the locality of the purchaser at one end of the route, as well as against the locality of the shipper at the other end. The whole question of discrimination related to the whole transaction of commerce and its movement in trade from the maker to the consumer. The route was the same. The rate was the same, and, if discriminatory, the injury existed as well to one locality as to the other, in that it impeded commerce and prevented a purchaser buying as well as a vendor selling. In this case, the finding of the Commission that the rate prejudiced Jersey City was based upon evidence to meet which an opportunity by a rehearing was afforded the defendant, and the fact that much of the evidence upon which the finding was based was the same that was introduced for the purpose of proving prejudice to the locality of the seller is unimportant, inasmuch as it was likewise sufficient to find prejudice against the locality of the purchaser. The thing that was made the subject of the order was involved in the complaint and established by evidence.

Is there any question that the Commission, with the parties before it, could have made the finding of discrimination against Jersey City, if the inquiry had been based upon the complaint of Jersey City, or upon

a like proceeding instituted of its own motion? If not, then with the parties before it, and with the discriminatory effect of the rate against the locality of Jersey City, being necessarily linked with and related to any question of discrimination against the locality of Evansville, and being openly made a part of the controversy, we see no reason why, in that proceeding, the Commission could not make the same finding and order as it could have made if the proceeding had been otherwise instituted. We are of opinion that traffic with the locality of Jersey City is so related to traffic with the locality of Evansville, the two localities being the termini of the journey for which the rate in controversy was fixed, that in the proceeding, as instituted and conducted, the Commission possessed the power to find discrimination against either one locality or the other.

[2] Second. The remaining question presented from the viewpoint of the defendant, briefly stated, is whether the Commission, in finding discrimination, is restricted to discriminatory rates fixed by a carrier between different points upon its own line, or whether the Commission has power to find discrimination against a locality, because a carrier, serving that locality, does not conform its rates to lesser rates fixed by competing carriers. We do not think that this case presents in the abstract the question thus suggested by the defendant; nor do we think the Commission compelled the defendant carrier to adjust its rate because independent carriers charged lesser rates.

At first view it would appear that the defendant carrier established a rate from one locality to another on its own line, and that other carriers established on their lines lesser rates between the same localities, and for that reason the defendant was coerced to lower its rate, with the result that its rate was not fixed by itself but was fixed by its competitors. That is not the reason which underlies the order of the Commission. The reason for the Commission's order exists in the fact that joint rates on cement from the Lehigh district to points of distribution east and south had been made by all the carriers serving the different mills in that district. In this joint tariff, the Reading Company uniformly and consistently participated, excepting in the rate to Jersey City. Even in that rate the Reading Company participated when the cement delivered for carriage was destined for transshipment to coastwise ports, but for cement intended for local consumption it made an exception, and fixed a rate from Evansville to Jersey City that excluded the Evansville cement from the Jersey City market. The act of excepting Jersey City from the advantages of traffic rates, which, in participation with other carriers, it accorded other localities, was the act of the Reading Company and not the act of its competitors. The act of withdrawing from Jersey City the right it afforded all other localities on relatively the same terms to procure the transportation of Evansville cement was the act of the Reading Company and not of its competing carriers. The act which in effect prohibited the sale of Evansville cement in the Jersey City market, and conversely prohibited the Jersey City market resorting for cement to the Evansville locality, thereby stopping commerce in that commodity between the two localities, was the act, not of its competitors, but of the Reading Company itself.

From these acts of the Reading Company, which were all acts of its own, and by which Jersey City was singled out as the one locality to be excepted from the advantages of relatively equal rates accorded all other localities of cement distribution, the Commission found that the Reading Company had discriminated against Jersey City, and accordingly ordered it to cease and desist from maintaining a rate that produced such a prejudice and discrimination.

The effect of excepting Jersey City from relatively the same rates which the Reading Company had participated with other carriers in prescribing for traffic from the Lehigh cement region to markets south and east was to stop traffic in cement from Evansville to Jersey City and make impossible the purchase of Evansville cement either in Jersey City or in New York City below Forty-Third street by consumers in either or both of those very large purchasing districts. The power of the Commission to find discriminatory such an exception to the joint traffic arrangement entered into depends in this case upon the purpose and intent of the act which created the Commission. The purpose of the act, as pronounced by the Supreme Court, "is to promote and facilitate commerce." This is its primary object. This is the end sought to be attained. This is the thing intended to be accomplished. To effectuate this purpose, there is conferred upon the Commission power to adopt "regulations to make charges for transportation just and reasonable, and to forbid undue and unreasonable preferences or discriminations," and, "in passing upon questions arising under the act, the tribunal appointed to enforce its provisions, whether the Commission or the courts, is empowered to fully consider all the circumstances and conditions that reasonably apply to the situation." The Supreme Court has further held that in the exercise of its jurisdiction, in promoting and facilitating commerce, as applied to the situation before it, the tribunal "may and should consider the legitimate interests, as well of the carrying companies as of the traders and shippers; and in considering whether any particular locality is subjected to an undue preference or disadvantage, the welfare of the communities occupying the localities where the goods are delivered is to be considered, as well as that of the communities which are in the locality of the place of shipment"; and when the act "says that no locality shall be subjected to an undue or unreasonable prejudice or disadvantage in any respect whatsoever, it does not mean that the Commission is to regard only the welfare of the locality or community where the traffic originates or where the goods are shipped on the cars. The welfare of the locality to which the goods are sent is also under the terms and the spirit of the act to enter into the question." Texas Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 220, 233, 16 Sup. Ct. 666, 675 (40 L. Ed. 940).

The situation in this case embraces two localities, and the welfare of the locality to which the goods are sent enters as readily into the situation as the welfare of the locality from which they are sent. If the jurisdiction of the Commission were restricted to the regulation of the railroads, as distinguished from the regulation of commerce, the question presented might be different; but as the function and jurisdiction of the Commission is the regulation of commerce and not the regula-

tion of railroads, except in so far as they are instruments of commerce, the question resolves itself into the power of the Commission to regulate commerce between the localities affected by the rate in controversy.

The Commission has found, as a matter of fact, that in excepting the rate between Evansville and Jersey City from its otherwise complete participation in the relative rates established by all carriers from the Lehigh district to points of distribution, commerce in cement between Evansville and Jersey City has been impeded, traffic arrested, undue advantage afforded shippers from other points in the same shipping district, and undue prejudice and discrimination exerted against purchasers in the purchasing district. This finding of fact cannot be disturbed by this court if the Commission in so finding acted within its powers. It is difficult to lay down any general principle defining or limiting the purpose of the act and the power of the Commission created under it, and such is not attempted in this case; but, under the facts of this case, we are of opinion that a finding by the Commission of undue discrimination, effected by the rate imposed, was within its power, and as that finding was a finding of fact, concerning the wisdom or expediency of which this court has nothing to do, the order should not be disturbed.

The bill is dismissed.