NASHVILLE GRAIN EXCHANGE et al. v. UNITED STATES et al.

(District Court, N. D. Georgia.  June 8, 1916.)

No. 75.

COMMERCE ☞85—INTERSTATE COMMERCE ACT—LONG AND SHORT HAUL CLAUSE—POWERS OF COMMISSION.

Although the existence of water competition may justify railroad carriers in granting to dealers in a commodity at a certain point the privilege of unloading, rebilling, and reshipping to further points at through rates from the point of initial shipment, it does not necessarily follow that the particular privilege granted does not give to such dealers an undue preference or advantage over dealers at others points to whom the same privilege is not extended, but the question is one of fact to be determined by the Interstate Commerce Commission under the power conferred by section 4 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 380, as amended by Act June 18, 1910, c. 309, § 8, 36 Stat. 547 [Comp. St. 1913, § 8566]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. ☞85.]

In Equity.  Petition by the Nashville Grain Exchange and others against the United States and others.  Bill dismissed.

On application to enjoin the enforcement of a certain order of the Interstate Commerce Commission and to annul and vacate the same under the act of October 22, 1913, c. 32, § 1, 38 Stat. 208, entitled "An act making appropriations to supply urgent deficiencies in appropriations for the fiscal year nineteen hundred and thirteen, and for

other purposes." Application for injunction denied, and bill dismissed. See, also (Com. C.) 191 Fed. 37; (Com. C.) 197 Fed. 58; and United States v. Louisville & N. R. Co., 235 U. S. 314, 35 Sup. Ct. 113, 59 L. Ed. 245.

Perkins Baxter and O. P. Anderson, both of Nashville, Tenn., for petitioners.

Blackburn Esterline, Sp. Asst. Atty. Gen. (E. Marvin Underwood, Asst. Atty. Gen., on the brief), for the United States.

Charles W. Needham, of Washington, D. C. (Joseph W. Folk, of Washington, D. C., on the brief), for Interstate Commerce Commission.

Before WALKER, Circuit Judge, and NEWMAN and FOSTER, District Judges.

PER CURIAM. The bill in this case is an attack upon the order made by the Interstate Commerce Commission after the Supreme Court had remanded a former case attacking a previous order of the commission to enable a decree dismissing the bill in that case to be entered without prejudice to the right of the carriers to apply to the commission to be relieved from the operation of the provisions of section 4 of the Act to Regulate Commerce, upon a rebilling and reshipping privilege on grain, grain products, and hay which was in effect at Nashville when said section 4 was amended by the Act of June 18, 1910. United States v. Louisville & Nashville R. Co., 235 U. S. 314, 35 Sup. Ct. 113, 59 L. Ed. 245.

Under the decision in that case we do not think that it is here open to dispute that the right to continue the exercise of that privilege is dependent upon an authorization of it, in whole or in part, conditionally or unconditionally, by an order of the Interstate Commerce Commission made in the exercise of the power conferred by amended section 4 of the Act to Regulate Commerce. By the order of the commission which is the subject of attack, the carriers were "notified and required to cease and desist, on or before the 15th day of October, 1915, from granting to Nashville, and to the dealers in grain, grain products, and hay located at Nashville, the said privilege of rebilling or reshipping said commodities from Nashville, so long as said defendants refuse and refrain from granting to Atlanta, Columbus, Macon, Cordele, Albany, Valdosta, Dublin, Montezuma, Rome and Athens, or any of them, and to the dealers in said commodities located at said cities, the said privilege of rebilling or reshipping said commodities from said cities." The order provided that it "shall continue in force for a period of not less than two years from the date when it shall take effect." Before the order was to become effective, the railroads put in the reshipping and rebilling privilege at the points other than Nashville named in the order and retained it at Nashville, changing the privilege, however, as it had previously existed at Nashville, by making it applicable to carload traffic only; whereas, it had previously been in effect at Nashville also as to shipments of less than carload quantities. This change was the act of the carriers, and was not required by anything contained in the order complained of.

We understand that the attack made upon the commission's order is based upon the contention that the privilege formerly allowed at Nashville, while it was withheld from the other localities mentioned in the order, was not subject to be changed by the commission unless, upon investigation, it was disclosed by evidence that it operated to give Nashville an undue preference or advantage, and that there was an entire absence of evidence tending to prove that such was its operation and effect. It may be assumed, without being decided, that Nashville grain dealers, or an association of them, have such an interest in the continuance of the practice as it formerly existed as to have a standing in court to complain of an invalid order of the commission which enabled the carriers to discontinue the practice altogether or partially, and that such a complaint would have to be sustained, if it was made to appear that the commission's order was made in the absence of any evidence to support a finding that the practice operated to the undue or unreasonable preference or advantage to Nashville. But we are not of opinion that the charge of arbitrariness or that the action taken was unsupported by evidence is sustainable. The tariffs which were in evidence before the commission show that under them dealers at Nashville in grain, grain products, and hay could bring those commodities from the Ohio river crossings to Nashville, unload, treat, and store them, and ship them on to points of final destination further south, at the through rates from the river crossings to points of final destination, while dealers or jobbers in the same things in the other places named in the order had to pay the through rates to those places on such commodities shipped from the river crossings, and, to get them to other points, had to pay also local rates to such points of final destination—the through rate to the jobbing point and the local rate to a nearby point of final destination frequently amounting to considerably more than the through rate from the river crossings to the point of final destination.

The commission had before it much evidence to illustrate how this rate situation operated to aid in building up a grain, grain products, and hay business at Nashville, and to circumscribe and obstruct the carrying on of a jobbing business in those commodities in the other places named in the order. The question whether the resulting advantage to Nashville was or was not undue or unreasonable was one of fact peculiarly appropriate for the determination of the Interstate Commerce Commission. Though the fact was that the existence of river competition at Nashville was a serious, or even insuperable, obstacle in the way of the railroads to that place attracting to themselves grain, grain products, and hay for carriage from the Ohio river crossings to Nashville if the through and local rates to and from that place were applied to such shipments without modification as they were at the other places which complained of the preference accorded to Nashville, it does not necessarily follow from that fact that the particular privilege with reference to such commodities which the railroads saw fit to allow at Nashville, while they withheld it from the other localities named in the attacked order, did not amount to an undue or unreasonable preference or advantage to Nashville and have the effect

of subjecting such other localities or jobbers or dealers thereat to undue or unreasonable prejudice or disadvantage. In view of the great mass of evidence having some bearing on the inquiry submitted to the commission, a tribunal expert in matters of rate regulation and adjustment, we are of opinion that there is no merit in the contention that it was so entirely without data from which to draw an inference as to the reasonableness or unreasonableness of the practices of the carriers which were the subjects of consideration as to justify a court in pronouncing the order complained of arbitrary and unwarranted. O'Keefe, Receiver, v. United States, 240 U. S. 294, 36 Sup. Ct. 313, 60 L. Ed. 651 (Feb. 21, 1916).

The conclusion is that the bill should be dismissed, and it is so ordered.