## UTAH COPPER CO. et al. v. RAILROAD RETIREMENT BOARD.

## NEVADA CONSOL. COPPER CORPORATION et al. v. SAME.

### Civil Nos. 248, 278.

District Court, D. Colorado.

Aug. 22, 1941.

---

764

In Civil No. 248:

Dickson, Ellis, Parsons & McCrea and C. C. Parsons, all of Salt Lake City, Utah, and Smith, Brock, Akolt & Campbell and Elmer L. Brock, all of Denver, Colo., for plaintiffs.

Lester P. Schoen, of Washington, D. C., for defendant.

Royal R. Irwin, of Denver, Colo., and Mulholland, Robie & McEwen, of Toledo, Ohio, for interveners.

In Civil No. 278:

Dickson, Ellis, Parsons & McCrea and C. C. Parsons, all of Salt Lake City, Utah, Elmer L. Brock, of Denver, Colo., and W. Howard Gray, of Ely, Nev., for plaintiffs.

Lester P. Schoen, of Washington, D. C., for defendant.

Royal R. Irwin, of Denver, Colo., and Mulholland, Robie & McEwen, of Toledo, Ohio, for interveners.

SYMES, District Judge.

These two actions, consolidated and tried together by stipulation, are brought pursuant to § 11 of the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228k, providing that any employee or person aggrieved may apply to the district court of any district wherein the Board may have established an office, (1) to set aside an action or decision of the Board claimed to be in violation of a legal right of the appellant, or (2) to take action, or to make a decision necessary for the enforcement of the legal right of an appellant. Such court shall have jurisdiction to entertain such action and grant appropriate relief.

Plaintiff in 278 seeks to set aside the decision of the defendant Board, holding that the individuals who have been employed at any time since September 1, 1920, in ore transportation or switch tending service on the ore railroad of the plaintiff, the Nevada Northern Railway Company, were compensated directly for such service by the plaintiffs Nevada Consolidated Copper Corporation and Kennecott Copper Corporation, and their predecessors in interest.

The Board decided these employees have been subject to the continuing authority of the Nevada Northern, to supervise and direct the manner of rendering such service and that said individuals were, during the times involved, in the service of the Nevada Northern with respect to such service, within the meaning of the Railroad Retirement Act of 1935 and 1937, 45 U.S.C.A. § 228a et seq., and that accordingly such service is creditable towards annuities under said Act. The Board's decision was the result of evidence taken at a hearing held before a board examiner, and upon the examiner's report and oral and written argument presented by both sides. The hearing was held jointly with a hearing before an examiner for the

Interstate Commerce Commission in a proceeding, Ex-parte 72 sub-No. 1, to determine whether certain orders of that Commission defining and classifying employees and subordinate officials should be amended or interpreted pursuant to the fifth paragraph of § 1 of the Railway Labor Act, 45 U.S.C.A. § 151, subd. 5, so as to include the work performed by the individuals employed in ore transportation services on the ore railroad of the Nevada Northern.

In 248 the same identical question was presented in respect to the Bingham and Garfield Railway Company employees. It is sought to have the decision set aside only insofar as it held that the individuals who have been engaged since May 28, 1920, in the performance of "ore transportation service"; that is, service in connection with the transportation of ore, or the movement of trains or cars over the tracks of the plaintiff Bingham and Garfield Railway between Bingham and Arthur and Magna, Utah, including switching operations connected with the unloading of cars of ore at the copper company's or Kennecott Mill at Magna or Arthur, Utah, for which service they have been compensated directly by the copper company, have been subjected to the continuing authority of the railway company, to supervise and direct the manner of rendering such service, and have been in the service of the latter company within the meaning of the Railroad Retirement Act of 1935 and 1937, and thereafter, to and including November 9, 1936, in their operations of certain shops at Magna, Utah, an "employer" under the Railroad Retirement Act of 1937, and a carrier under the Railroad Retirement Act of 1935, and that the service of the individuals employed in the ore transportation and railroad shop operations referred to is creditable towards annuities under said Act. The Board's decision was rendered on a basis of the evidence taken before a board examiner, and after a hearing upon his report and full argument by the plaintiff and the employees involved.

The first question presented is: Whether this court's review of the decision of the defendant Board is, as contended by the latter, limited to a determination whether the decision was supported by substantial evidence, is arbitrary or capricious, or based on a clear error of law. The plaintiff's position being that the issue is not to be determined by the existence merely of substantial evidence on which to sustain the defendant's decision, but that instead the review here is one upon questions of both law and fact, and is in effect a trial de novo on the record as upon review of equity cases.

A careful review of the decisions supports the principle that where the Congress has set up an administrative agency with power and authority to determine questions of fact, or mixed questions of law and fact, that such determination by the agency is conclusive, unless it is arbitrary or capricious, or unsupported by evidence, or based on a clear error of law.

In Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147, the Federal Communications Commission appointed a trial examiner, before whom a thorough hearing was had, and briefs submitted. The examiner filed his report and the Commission made a decision upholding its examiner and held the Rochester company was under the control of another corporation. The Rochester company thereupon filed its bill in the lower court, alleging the order of the Commission was contrary to the undisputed facts, erroneous as a matter of law, and the threat to enforce the order put the Rochester company to the hazard of irreparable injury and asked the district court to set aside and annul the orders of the Communications Commission and enjoining their enforcement.

The Supreme Court reviewed the history of and the doctrines limiting the judicial review of orders of the Interstate Commerce Commission. The first is the doctrine of Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, with which we are not here concerned. Second, the doctrine of administrative finality, upon which the Court said, 307 U.S. at page 139, 59 S.Ct. at page 762, 83 L.Ed. 1147: "Even when resort to courts can be had to review a Commission's order, the range of issues open to review is narrow. Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable." The Court goes on to say (307

U.S. at page 145, 59 S.Ct. at page 764, 83 L.Ed. 1147) the record amply justified the Communications Commission in making the findings it did, and—

"So long as there is warrant in the record for the judgment of the expert body it must stand. * * *

" 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' "

Citing Mississippi Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260, and other cases.

 The power of Congress to create the Railroad Retirement Board and enact the statute is not disputed. There is no question but what a full hearing was given. Plaintiffs appeared and had the opportunity to, and did, present their evidence and arguments at length. Therefore the question is, as in Shields v. Utah Idaho R. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111, whether the Board in arriving at its determination departed from applicable rules of law, and whether its finding had a basis in substantial evidence, or is arbitrary or capricious. That question must be determined on the evidence produced before the Commission. The decision of the Court was that the district court erred in permitting a trial de novo. It seems to us, as stated in United States v. Louisville & Nashville R. R. Co., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245, the purpose for which the defendant Board was created was to have a body which, from its peculiar character and specialized experience, will be most fitted to primarily decide questions such as are raised on this record. Otherwise, as the Court pertinently states (235 U.S. at page 321, 35 S.Ct. at page 114), the Board would become "but a mere instrument for the purpose of taking testimony to be submitted to the courts for their ultimate action."

 We have carefully reviewed this record and the least that can be said is that there is substantial evidence to sustain the finding of the Board.

Second, the railroad companies involved are wholly owned subsidiaries of the respective mining companies, created solely to serve them, and having no other business but that of transporting their ore between the mines and the mills, etc. Admittedly that was the situation before the trackage license agreements of May 28, 1920, effective September 1, 1920, were entered into between the mining company and its subsidiary the railroad company. These agreements were admittedly made for the express purpose of preventing the application to the railroad companies of the recapture provisions of § 15a of the Interstate Commerce Act, 45 U.S.C.A. § 15a. The railroad in each case granted the mining company a revocable license to use for an indefinite period the line of each railroad from the mines to the reduction works for the purpose of transporting its ores and equipment. The agreement provided, however, that the control and direction of the operations carried on over the railroad to be exclusively in the railroad, although the ore transportation on the railroads has been performed by individuals who received their compensation from the mining company, under the supervision and direction of the railroad company as to the manner of rendering the service.

For these and other reasons we conclude the defendant Board was justified in holding such individuals have been "in the service of" the Nevada Northern and the Bingham and Garfield Railway Company, as the case may be, with respect to such service, within the meaning of the Railroad Retirement Acts of 1935 and 1937.

A study of this entire record forces such a conclusion, if we disregard immaterial considerations and look at the substance of the things and not the stage scenery apparently set up to camouflage the real situation.

The actions will be dismissed with costs in favor of the defendant.