## ST. JOSEPH STOCKYARDS CO. v. UNITED STATES et al.

### No. 204.

District Court, W. D. Missouri, St. Joseph Division.

April 16, 1932.

W. N. Strack, of Chicago, Ill. (Ross Dean Rynder, of Chicago, Ill., and Culver, Phillip & Voorhees, of St. Joseph, Mo., on the brief), for petitioner.

John Lord O'Brian, Asst. to Atty. Gen. (William G. Davis and Hammond E. Chaffetz, Sp. Assts. to Atty. Gen., Wm. L. Vandeventer, U. S. Atty., of Kansas City, Mo., and Elton L. Marshall, Sol., Department of Agriculture, and J. S. Bohannan, Atty., Dept. of Agriculture, both of Washington, D. C., on the brief), for defendants.

Before BOOTH, Circuit Judge, and SANBORN and OTIS, District Judges.

PER CURIAM.

This is an action in equity brought by the petitioner to enjoin the enforcement of an order made by the Secretary of Agriculture fixing certain maximum rates for services to be charged by the petitioner at its stockyards in St. Joseph, Mo. The order of the Secretary, the enforcement of which is sought to be enjoined, was made by him pursuant to the powers in him vested and the duties imposed on him by section 310 of the Packers and Stockyards Act of 1921 (7 USCA § 211), which is:

"Section 310. Whenever after full hearing upon a complaint made as provided in section 309, or after full hearing under an order for investigation and hearing made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable or discriminatory, the Secretary—

"(a) May determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what regulation or practice is or will be just, reasonable, and nondiscriminatory to be thereafter followed; and

"(b) May make an order that such owner or operator (1) shall cease and desist from such violation to the extent to which the Secretary finds that it does or will exist; (2) shall not thereafter publish, demand, or collect any rate or charge for the furnishing of stockyard services other than the rate or charge so prescribed, or in excess of the maximum or less than the minimum so prescribed, as the case may be; and (3) shall conform to and observe the regulation or practice so prescribed."

Acting in accordance with the provisions of this section, the Secretary of Agriculture, on October 9, 1929, on his own initiative, made an order for the investigation of the

rates for services charged by the petitioner. Pursuant to that order an extensive hearing was held before an examiner designated by the Secretary of Agriculture. The hearing began December 2, 1929, and was concluded December 19th in the same year. Upon the testimony taken by the examiner, the order here involved was promulgated July 20, 1931. In that order, which was to become effective 45 days after its date, maximum rates to be charged for stockyards services by the petitioner were fixed. The order was predicated upon a fair value of the petitioner's property used and useful in the rendition of the services for which the rates were to be charged as of the year 1928, determined by the Secretary to be $3,382,148, and the volume of petitioner's business during that year. It was determined by the Secretary that, had the rates prescribed by him in his order been in effect in the year 1928, petitioner's net operating income would have been $256,068, or the equivalent of 7.5 per cent. on a valuation of $3,414,247.

After various introductory and formal matters the bill alleges that the rates for services prescribed by the Secretary in his order are not supported by any evidence, are contrary to the evidence and the weight of the evidence, and that, if applied, they will deprive the petitioner of its property without due process of law in violation of the Fifth Amendment. More specifically it is alleged that the Secretary had no authority to make a valuation of petitioner's property, and that the valuation made by him was void in that he erroneously determined the amount of land used by the petitioner in performing its stockyard services, in that he erroneously valued the land which he found was so used, in that he had no authority to determine the amount of land to be used by the petitioner in connection with its stockyard services or what amount of land it should be allowed to hold for expansion purposes, in that he erroneously excluded certain properties from valuation, in that he erroneously excluded from the valuation fixed by him certain properties other than land, in that he erroneously excluded, in arriving at his valuation, organization expenses, in that he erroneously determined the going concern value of the petitioner's business, in that he allowed for depreciation reserve and maintenance amounts less than those to which the petitioner was entitled, in that he erroneously determined the net income of the petitioner, in that the rate of return allowed by him was insufficient, and in that he had no authority to determine what rate of return was reasonable and proper. The bill alleges that the rates for services ordered by the Secretary will afford the petitioner a return of 4.74 per cent. only on the true value of petitioner's property, and that, therefore, the order of the Secretary is confiscatory.

It is further alleged in the bill that on February 11, 1931, the petitioner filed with the Secretary, in the proceeding then pending before him, what was called a "petition for reopening." In that petition was contained the following, among other things:

"Respondent avers that any yardage rate or rates which may be prescribed in this proceeding must be considered in connection with the amount of livestock yarded by Respondent. Respondent avers that the receipts of livestock at Respondent's stockyards have declined materially since the hearing in the above proceeding and that said decline in receipts has decreased substantially not only Respondent's revenue but also its net revenue for rate making purposes.

"Respondent avers that any feed charges which may be prescribed in this proceeding must be considered in connection with the amount of feed sold by Respondent. Respondent avers that the amount of feed sold at its yards has decreased materially since the hearing in the above proceeding, and that said decrease has reduced both Respondent's gross revenue and its net revenue for rate making purposes.

"Respondent avers that its net operating income for rate making purposes has declined since the hearing in the above proceeding, and that Respondent's net operating income for rate making purposes, as it appears in the record in said proceeding, no longer fairly represents the net operating income of Respondent for rate making purposes. Respondent avers that its net operating income for rate making purposes for the year 1930 was not more than $251,353.40. Respondent desires to introduce evidence of its net operating income for rate making purposes for the years 1929 and 1930, which is not of record in the above proceeding.

"Wherefore, Respondent respectfully prays that an order be entered reopening the above entitled proceeding and that said proceeding be set down for further hearing on the subjects set forth above."

It is alleged that this petition for reopening was by the Secretary denied, and in that connection:

"That the findings made by said Secretary are based upon conditions which existed with respect to the business of petitioner, including its income, expenses and other pertinent matters, solely during the year 1928; that the order prescribed in said proceeding by said Secretary is to become effective in September, 1931; that as more particularly appears in said Petition for Reopening, circumstances and conditions, including the nature of the services rendered by petitioner in operating its public stockyards, and its income and expenses in connection therewith, have materially changed since the year 1928; that the net operating income of petitioner for the year 1930 was $251,353.40, which is less than the reasonable net operating income which said Secretary found petitioner entitled to obtain as a fair return upon its property devoted to stockyards use; that said net operating income for the year 1930 is substantially less than the amount found by said Secretary to be the net operating income of petitioner for the year 1928; and substantially less the real and true net income of petitioner for the year 1928; that the action of said Secretary in denying petitioner an opportunity to establish the facts stated in said Petition for Reopening was arbitrary, and that no reason therefor is stated in said Findings, Conclusions and Order; that it was the lawful duty of said Secretary to permit petitioner, prior to his final decision in this case, to offer evidence in said proceeding for the purpose of establishing the allegations of said Petition for Reopening; that by said arbitrary action petitioner has been denied the full hearing in this proceeding required by statute; that the denial of said Petition for Reopening constituted an abuse of power on the part of said Secretary, contrary to the statute; and that said action of said Secretary upon said Petition for Reopening will result, if said order is permitted to become effective, in confiscation of petitioner's property, without due process of law, in violation of the Fifth Amendment to the Constitution of the United States.

"(O) That, as a part of said Findings, Conclusion and Order, said Secretary finds the fair value of petitioner's property used and useful in the rendition of service in connection with its stockyards to be $3,382,-148, and that a fair and reasonable net annual return thereon would be $253,661; that had the rates and charges prescribed by said Secretary in said Findings, Conclusions and Order been in force and effect during the year 1930, petitioner's net operating income would have been not more than $151,197.92; and had said rates and charges been in effect during the first six months of the year 1931, its net operating income would have been not more than $47,366.21; that the net operating income of petitioner under the rates and charges prescribed by said Secretary would have been, for the year 1930 and the first six months of 1931, the amounts set forth above, which, respectively, are but a return of 4.74 per cent. and 2.8 per cent. upon the fair value of petitioner's property, as found by said Secretary, and but a return of 2.82 per cent. and 1.77 per cent., respectively, upon the real and true value of the property used by petitioner in performing stockyard services; that petitioner's property would thereby be confiscated, without due process of law, in violation of the Fifth Amendment to the Constitution of the United States."

The answer of the defendants denied all of the allegations in the petitioner's bill as to lack of power in the Secretary to make the order made by him and to determine the facts upon which that order was based, and specifically denied that the facts found by the Secretary were not based upon the evidence heard by him or were contrary to the weight of that evidence.

It is admitted in the answer that the "petition for reopening" referred to in the bill was presented to the Secretary as alleged and was denied by him, but it is set up that his action in so denying this petition was not arbitrary. The answer alleges in that connection:

"That for the Secretary to have allowed petitioner to introduce evidence concerning the alleged changed conditions stated in this petition for a reopening without giving opportunity for the presentation of evidence tending to show counterbalancing changes and conditions would have been unfair; that to have reopened the entire matter would have brought about what would have been in effect an entirely new rate proceeding. Defendants say further that the Secretary acted reasonably in determining that such new proceeding was not necessary; and that he reasonably concluded from his general knowledge and from the evidence produced in the proceedings before him that the year 1928 adopted as the test year in the proceedings before him occurred at the peak of a long period of ever increasing prosperity and business activity; that as a re-

sult thereof, volumes of business, gross revenues, net incomes, net operating incomes, property values and rates of return in business generally, whether private or public utility, stockyard or otherwise, were at high levels; that since the year 1928 there has been a substantial nationwide depression in volumes of business, gross revenues, net incomes, net operating incomes, property values and rates of return of business generally and also a substantial reduction in costs of living; that the property and business of petitioner was affected by the general conditions prevailing in 1928 and is affected by those prevailing now; that, as a result of the method employed in ascertaining the fair value of petitioner's property and the fair rate of return thereon, the high values and returns of the period of which the year 1928 was a part are reflected in the aforesaid Order of the Secretary, notwithstanding that petitioner's volume of business in said year 1928 was but slightly above the average for the previous twenty-five years; and that were a fair value of petitioner's property and a fair rate of return thereon now ascertained under present conditions they each would be substantially lower than those found in said Order of the Secretary which, notwithstanding the matters and things alleged in petitioner's said petition for reopening, would result in a fair return less than that found in said Order of the Secretary, which return, when applied to the volume of business reasonably to be expected for petitioner within the immediate future, would justify lower maximum reasonable rates than those prescribed in said Order of the Secretary. * * *

"Defendants are without knowledge as to what petitioner's net operating income would have been during the year 1930 and during the first six months of the year 1931, had the rates and charges prescribed by the Secretary been in force and effect, but say and allege that such matters are not material to the determination of this case and that proof thereof is not admissible before this Court."

A temporary injunction was issued by this court restraining the enforcement of the Secretary's order pending a final hearing. Upon the trial of the case, the record of the proceedings and the evidence heard by the examiner for the Secretary upon which the Secretary's order was made were introduced in evidence by the petitioner. Certain other evidence was then offered by the petitioner for the purpose of showing changed conditions since the date of the hearing before the Secretary's examiner. The evidence was received subject to the objection of the defendants that it was not competent, and that the validity of the Secretary's order was to be determined only upon the evidence heard by him.

As to the evidence touching changed conditions and as to the effect upon the petitioner's income of the Secretary's order and the rates for services provided in it, if that order and those rates had been in force in the years 1930 and the first six months of the year 1931, it is sufficient to say that it established the truth of the allegations of the petitioner's bill in that connection. No offsetting evidence was introduced. Upon the record it must be concluded that, if the rates ordered by the Secretary had been charged in 1931, the petitioner would have had a return upon the valuation found by the Secretary for the year 1930 of 4.74 per cent. and for the first six months of the year 1931 of 2.82 per cent.

Three principal questions are presented. They are:

1. Did the Secretary have power to make a valuation of petitioner's property used and useful in its business in connection with his authority under section 310 to prescribe fair and reasonable rates and charges for stockyards services? The petitioner contends that the Secretary had no such power, and therefore that rates for services predicated upon a valuation made by him are illegal.

2. Assuming that the Secretary had power to make a valuation, and to make other findings essential to the determination of fair and reasonable rates, were the rates fixed by his order fair and reasonable or confiscatory upon the record before the Secretary and without regard to any change in petitioner's business or the value of its property?

3. If the Secretary did have authority to make the valuation which he made and other necessary findings, and if that valuation was a fair valuation as of the time when it was made, and if the rates for services predicated thereon and on the volume of petitioner's business were not confiscatory as of that time, have they, nevertheless, by reason of changed conditions, become confiscatory, may evidence be heard by this court on that issue, should the enforcement of the Secretary's order be now enjoined if the rates fixed are shown to be confiscatory under conditions as changed?

1. The maximum rates prescribed by the Secretary in his order were based on what

he found was the fair value of the property of the petitioner properly used in its stockyards business. The contention is made by the petitioner that the Secretary had no authority to make a valuation; that therefore all of the evidence received upon that subject was incompetent, and that, since his order is based entirely on such incompetent evidence, it is invalid as being without any support in the evidence. It is asserted by the petitioner that the Secretary had no authority except that which the statute gives him, and that the statute does not expressly authorize him to make a valuation on a stockyards property.

■■■ There is no merit in the contention that the Secretary is not empowered to receive evidence and to make a finding based on that evidence. It is true that no such authority is given expressly in the statute, but he is expressly empowered by the statute, and it is his duty, after investigation and hearing, to determine whether rates for services charged for stockyard companies are unreasonable and to prescribe rates which will be reasonable. There is necessarily implied in this power the authority to hear evidence and to make a finding as to valuation.

The Secretary is required to hear evidence as a basis for any order he may make touching rates to be charged for services. Certainly evidence which is relevant to what are reasonable rates is competent evidence. The argument of the petitioner that valuation of property used in stockyards services has no relevancy to rates to be charged for those services is palpably untenable. Wherever rates are fixed by proper authority for services rendered by utilities subject to regulation, valuation of property used always has been regarded as one of the facts essential to be considered. Certainly there is no distinction in principle in the regulation of rates to be charged by stockyards and those charged by railroads and public utilities generally.

In the early case of Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 434, 42 L. Ed. 819, in which state regulation of intrastate rates by railroads was involved and whether the rates fixed by a state were reasonable, the Supreme Court discussed what facts were proper to be considered in determining the reasonableness of rates. In that case it was said: "We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. * * * What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience."

■ A very strained construction seems to us in this connection to be placed by the petitioner upon the statute. It is urged that, while the Secretary is empowered to determine if unreasonable rates for services are being charged by stockyard companies and so determining to fix reasonable rates, that what is meant is only that he shall ascertain whether the rates charged by a given stockyards company are greater or less than those charged by other such companies. The implication in this argument is that in no case in which rates are charged by one company not greater than those generally charged would the Secretary be authorized to find that they were unreasonable. And the point is made that upon the evidence received by the Secretary's examiner in this case the rates charged by the petitioner are reasonable, since they are not higher than those charged by other stockyards companies. It is obvious that that cannot be the only test of reasonableness of rates. To so hold would be to say that rates everywhere must be the same without regard to the differences in the value of properties used in different places and without regard to any other conditions or elements that might affect the cost of services rendered.

The precise argument made by the petitioner in this connection was made also by the railroads in Smyth v. Ames, supra. It was argued there that the proper test as to whether rates charged in Nebraska were reasonable was to be determined by comparing them with those charged in adjoining states. As to that argument the Supreme Court said, adopting the opinion of the Circuit Court: "The roads may not discriminate against the people of any one state, but they are not necessarily bound to give absolutely the same rates to the people of all the states, for the kind and amount of business and the cost thereof are factors which determine largely the question of rates, and these vary in the several states. The volume of business in one state may be greater per mile, while the cost of construction and of maintenance is less; hence, to enforce the same rates in both states might result in one in greater injustice, while in the other it would only be reasonable and fair. Comparisons, therefore, between the rates of two states, are of

little value, unless all the elements that enter into the problem are presented. * * * A mere difference between the rates in two states is of comparatively little significance."

2. Whether, without regard to evidence of changed conditions, the Secretary's order should be enjoined as confiscatory is the matter which chiefly was argued at the hearing and in briefs of counsel. Involved in that argument was the question whether, where the issue of confiscation is involved, this court should consider de novo the whole record made before the Secretary or is bound by his findings of facts, if supported by substantial evidence. Following that preliminary question, there was involved the question whether the Secretary rightfully had excluded from his valuation certain of the properties of the petitioner and elements of value, and whether, as to those which were included, his findings of value were supported either by the weight of the evidence or substantial evidence. There was involved also the question whether the Secretary, in determining the net income of the petitioner, made proper allowance for repairs, maintenance, and depreciation reserve. There was the question whether the rate of return fixed by the Secretary was in itself confiscatory, having regard to the nature of the business of the petitioner. Concerning some of these matters, different conclusions have been reached by the several judges constituting the court. It is not necessary to decide them, since the conclusion has been reached that an injunction must issue because of the refusal of the Secretary to grant to the petitioner a reopening of the proceeding and because of the proved confiscatory effect of the rates fixed by the Secretary's order when applied to the business of the petitioner in the years 1930 and 1931.[1]

---

[1] Although the court does not in this case decide the questions referred to, they have been given careful consideration.

A majority of the court is of the opinion that although, generally speaking, the findings of the Secretary, if supported by any substantial evidence, must be accepted by the court, such is not the case where a constitutional question is involved. The majority entertains the view that in such a case, although the findings of the Secretary are to be given great weight (Darnell v. Edwards, 244 U. S. 564, 569, 37 S. Ct. 701, 61 L. Ed. 1317), they are not binding on the court, but the court must for itself determine from the weight of the evidence in the case the issues of fact which may be involved in it. The following, among other decisions of the Supreme Court, are pointed to as supporting this conclusion: Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 289, 40 S. Ct. 527, 64 L. Ed. 908; Bluefield Water Works & Improvement Co. v. Public Service Commission, 262 U. S. 679, 689, 692, 43 S. Ct. 675, 67 L. Ed. 1176; Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 50, 43 S. Ct. 466, 67 L. Ed. 853; Lehigh Valley R. Co. v. Board of Public

3. As is pointed out above, the bill alleges that, subsequent to the hearing before the Secretary's examiner and subsequent to the argument heard by the Secretary based on the testimony taken, to wit, on February 11, 1931, the petitioner filed with the Secretary a petition for a reopening of the proceeding. In that petition for reopening it was set out that an abnormal change in business conditions and in the volume of petitioner's business had taken place. A reopen-

---

Utility Commissioners, 278 U. S. 24, 36, 49 S. Ct. 69, 73 L. Ed. 161, 62 A. L. R. 805 ; United Railways & Electric Co. v. West, 280 U. S. 234, 251, 50 S. Ct. 123, 74 L. Ed. 390; Tagg Bros. & Moorhead v. United States, 280 U. S. 420, 423, 50 S. Ct. 220, 74 L. Ed. 524; Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289; Crowell v. Benson, 52 S. Ct. 285, 76 L. Ed. —— (February 23, 1932). A minority of the court, on the other hand, is of the opinion that, even where a constitutional question has been raised and the issue of confiscation is involved, findings of fact made by the Secretary, including the fair value of properties, if supported by any evidence, are conclusive upon a reviewing court. For this conclusion reliance is had upon the declination of the Supreme Court in Tagg Bros. & Moorhead v. United States, 280 U. S. 420, 442, 50 S. Ct. 220, 74 L. Ed. 524, to pass upon the question in connection with a rate-fixing order made by the Secretary and upon certain statutes and decisions of the Supreme Court (Packers and Stockyards Act, §§ 315, 316, title 7, §§ 216, 217, U. S. C. [7 USCA §§ 216, 217]; Act of June 29, 1906, 34 Stat. 584, amending chapter 104, 24 Stat. 384; United States v. Louisville & N. R. Co., 235 U. S. 314, 320, 35 S. Ct. 113, 59 L. Ed. 245; Interstate Com. Comm. v. Union Pac. R. Co., 222 U. S. 541, 347, 32 S. Ct. 108, 56 L. Ed. 308; Ohio Valley Water Company v. Ben Avon Borough [dissenting opinion] 253 U. S. 287, 297, 40 S. Ct. 527, 64 L. Ed. 908) passing upon a like question in connection with the power of the Interstate Commerce Commission, the scope of review as to orders made by the Secretary of Agriculture and the Interstate Commerce Commission being declared by the statute to be identical.

As to the principal matters in controversy between the parties in connection with the valuation of the petitioner's property, to wit, the value of the lands of petitioner upon which its business chiefly is conducted and the element of going concern value, a majority of the court is of the opinion that the values found by the Secretary are against the weight of the competent evidence. A minority of the court believes that the values as found by the Secretary in these respects are supported by substantial evidence and should be sustained. A majority of the court also is of the opinion that, in determining the net income of the petitioner, the Secretary made an allowance for repairs, maintenance, and depreciation, which was upon the weight of the evidence too small. A minority of the court thinks that the findings of the Secretary in these respects were supported by substantial evidence, and that his findings should be sustained. A majority of the court is of the opinion that, by reason of insufficient valuation as to properties which were included and of insufficient allowances for maintenance, repairs, and depreciation, the order of the Secretary has been shown to be confiscatory, even without regard to changed conditions. A minority of the court is of the opinion that, if changed conditions be disregarded and the order considered only upon the record made before the Secretary, it should be sustained. The court is unanimously of the opinion that the rate of return fixed by the Secretary is not in itself confiscatory, but that any lower rate could not be upheld.

ing of the proceedings before the Secretary was prayed that it might be shown that by reason of the changed conditions the enforcement of the Secretary's order would give to the petitioner a rate of return upon the valuation found by the Secretary materially less than 7.5 per cent.

The bill alleges that a reopening of the proceedings was arbitrarily denied by the Secretary, and sets up that the findings whereon the Secretary's order is predicated were based upon conditions which existed with respect to the business of the petitioner, including its income, expenses, and other pertinent matters, solely during the year 1928; that the order prescribed in said proceeding by said Secretary was to become effective in September, 1931; that, since 1928, circumstances and conditions, including the nature of the services rendered by petitioner in operating its public stockyards, and its income and expenses in connection therewith, have materially changed since the year 1928; that the net operating income of petitioner for the year 1930 was $251,353.40; that that amount is less than the reasonable net operating income which the Secretary found the petitioner was entitled to obtain as a fair return upon its property devoted to stockyards use; that it was substantially less than the amount found by the Secretary to be the net operating income of petitioner for the year 1928; that, had the rates and charges prescribed by the Secretary been in force during the year 1930, petitioner's net operating income would have been not more than $151,197.92, and that, had they been in effect during the first six months of the year 1931, its net operating income for that period would not have been more than $47,-366.21; and that, had the rates and charges prescribed by the Secretary been in effect for the year 1930 and the first six months of 1931, the petitioner would have had a return of only 4.47 per cent. and 2.8 per cent., respectively, upon the fair value of its property as found by the Secretary.

At the final hearing the petitioner offered in evidence, in addition to the transcript of the proceedings before the Secretary's examiner, testimony tending to establish the truth of the allegations contained in its bill, touching changed conditions in its business in the years 1930 and 1931, and tending to show what the effect upon its net income would have been had the rates and charges fixed by the Secretary's order been applied to its business in the years 1930 and 1931.

██ The defendants objected to the introduction of any testimony showing changed conditions. The testimony was received subject to that objection. The testimony offered clearly established the truth of the allegations in the petitioner's bill touching the decrease in its business and the effect which would have resulted had the rates and charges fixed in the Secretary's order been in effect. It appeared from that testimony that, upon the valuation determined by the Secretary, the petitioner would have had, in the year 1930, a net return upon its used and useful property of not more than 4.47 per cent., and for the year 1931 of not more than 2.8 per cent.

That it was proper to receive this testimony and that its effect is to make necessary a permanent injunction against the enforcement of the order of July 20, 1931, is made certain by the decision of the Supreme Court in Atchison, Topeka & Santa Fe Railway Co. et al. v. United States, the Interstate Commerce Commission et al., 284 U. S. 248, 52 S. Ct. 146, 149, 76 L. Ed. ——. That case was decided on appeal from the judgment of the United States District Court for the Northern District of Illinois, 51 F. (2d) 510, a statutory three-judge court, denying an interlocutory injunction against an order of the Interstate Commerce Commission. The order involved was made July 1, 1930, amended April 10, 1931. It prescribed maximum rates for the transportation of grain and grain products by railroads within that part of the United States on and west of the Mississippi River, west of Lake Superior in Michigan, and west of and including Illinois. The order was based upon an investigation, the record in which was closed September 22, 1928. It was to go into effect October 1, 1930, but its effective date was from time to time postponed. In September, 1930, the carriers involved asked for a rehearing, which was denied in November, 1930. A second petition for rehearing was presented to the Commission February 18, 1931, and was denied March 3, 1931. In this second petition for rehearing the carriers alleged that, since the closing of the record before the Commission in September, 1928, there had been material and important changes in the operating, traffic, and transportation conditions in the Western District, which affected adversely the revenues of the carriers, and that, regardless of the question of the validity and propriety of the order when made, it would no longer be valid and proper in the light of the existing circumstances.

The second petition for rehearing alleged in detail facts showing the changed conditions in the business of the carriers and the result which would follow from an application of the rates fixed by the Commission under the changed conditions.

The carriers filed their bill praying an interlocutory injunction against the enforcement of the Commission's order. The application for an interlocutory injunction was supported by affidavits addressed to the effect of the order upon their revenues under the changed conditions. Various contentions were made beyond the showing in these affidavits in support of the prayer for an interlocutory injunction. The Supreme Court, holding it unnecessary to pass upon these contentions, said:

"We do not find it to be necessary to consider these contentions and the counter arguments advanced on behalf of the Commission, or to review the Commission's reports, as it is sufficient for the present purpose to deal with the fundamental question presented by the action of the Commission in denying the appellants' second application for a rehearing. Ordinarily, a petition for rehearing is for the purpose of directing attention to matters said to have been overlooked or mistakenly conceived in the original decision, and thus invites a reconsideration upon the record upon which that decision rested. The second petition for rehearing, in this proceeding, was not of that character. It was of the nature of a supplemental bill. It presented a new situation, a radically different one, which had supervened since the record before the Commission had been closed in September, 1928. It asserted that, whatever might be the view of the order when made, and upon that record, a changed economic condition demanded reopening and reconsideration. The carriers insisted upon this reopening as a right guaranteed to them not only by the Act of Congress but by the Constitution itself.

"There can be no question as to the change in conditions upon which the new hearing was asked. Of that change we may take judicial notice. It is the outstanding contemporary fact, dominating thought and action throughout the country. As the Interstate Commerce Commission said in its recent report to the Congress, 'a depression such as the country is now passing through is a new experience to the present generation.' The Commission also recognized in that report 'the very large reductions in railroad earnings which have accompanied the economic depression,' and stated that 'the chief cause of these reductions has been loss of traffic.' For 'in such depressions the railroads suffer severely. Their traffic is a barometer of general business conditions.'

"It is plain that a record which was closed in September, 1928—relating to rates on a major description of the traffic of the carriers in a vast territory—cannot be regarded as representative of the conditions existing in 1931. That record pertains to a different economic era, and furnishes no adequate criterion of present requirements," etc.

The pertinence of this decision of the Supreme Court to the case here is plain. Here, too, a petition for a rehearing was presented to the Secretary, based upon changed economic conditions arising after the hearing on which the Secretary's order was based. This petition for a rehearing, while it did not go into as great detail as it might have, sufficiently presented the situation to the Secretary to call upon him in the exercise of his discretion to hear testimony touching the alleged changed conditions. That conditions had changed was a matter of common knowledge. It was certainly known to the Secretary. Giving no reason for his denial of the petition for a rehearing he denied it in the order involved in this cause. All that was said touching the petition was this: "It is further ordered that the petition for a reopening of this proceeding for a rehearing herein, filed by respondents on February 11, 1931, having been considered, be, and the same hereby is denied."

The rehearing should have been granted. Failure to grant it left to the petitioner no other recourse in the preservation of its constitutional rights than to present to this court the facts showing changed conditions and the effect they would have if the Secretary's order was enforced. That testimony clearly shows that the enforcement of the order of the Secretary under the conditions as changed would result in a confiscation of the petitioner's property in violation of the due process clause of the Fifth Amendment.

This conclusion indeed assumes that the valuation found by the Secretary is still a fair valuation of petitioner's property. But it is proper that that assumption be made. The rates for services ordered by the Secretary are predicated upon that assumption. Without it the order is invalid as having no foundation. It will not do to say that changed conditions also may have greatly depreciated the fair value of the petition-

er's property. The valuation fixed is the only valuation in the case, and it cannot be questioned and at the same time affirmed. The petitioner must indeed show that the rates for services are confiscatory, but is not required to show the valuation is still that which the Secretary, not only admits, but contends, is a fair valuation.

A permanent injunction will issue. The petitioner may submit for the consideration of the court appropriate findings of fact and decree.