## AMERICAN FURNITURE CO. et al. v. NORFOLK & W. RY. CO.

### No. 3702.

District Court, W. D. Virginia, at Danville.

Aug. 19, 1940.

648

Harry C. Ames, of Washington, D. C., for plaintiffs.

Grasty Crews, of Danville, Va., Lucian H. Cocke, Jr., of Roanoke, Va., and D. Lynch Younger, of Roanoke, Va., for defendant.

, PAUL, District Judge.

This is one of a group of actions brought under authority of Section 16 of the Interstate Commerce Act, 49 U.S.C.A. § 16, to recover damages based on orders of the Interstate Commerce Commission directing the payment of reparation for freight charges on coal held by the Commission to be unreasonable. Other companion cases are City of Danville v. Chesapeake & Ohio Ry. (Danville Hotel Co. v. Chesapeake & Ohio Ry.), 34 F.Supp. 620 (Nos. 3698 and 3699), submitted jointly; and City of Harrisonburg v. Chesapeake & Ohio Ry., 34 F.Supp. 640. In the cases named, the Court has heretofore filed its opinions and, inasmuch as the questions involved in the instant case are in some measure the same, no lengthy discussion of these similar questions need be made here.

The complainants in this action filed formal complaint with the Interstate Commerce Commission on August 30, 1930, attacking rates on carload shipments of coal from mines in Virginia and West Virginia to various points in Virginia. This complaint was docketed before the Commission as No. 23817 and appears to have been heard together with a number of other related complaints. After an amended complaint had been filed naming additional complainants, a hearing was had, as a result of which the Commission made a report on December 19, 1932. In this it was held that the rates assailed to Marion, Galax and Emory were not unreasonable, but that the rates to other points named were unreasonable, and designated the extent to which they were unreasonable as to each named destination. On May 25, 1933, the Commission amended its previous findings in so far as they related to a reasonable rate from certain origin districts to some five or six designated destinations.

The report of December 19, 1932, called on the parties to comply with Rule V relating to submission of statements showing details of shipments, charges paid, etc. The carriers declined to certify the correctness of the Rule V statements and a further hearing was had for proof by the complainants of the data necessary for the finding of the amount of reparation. On October 3, 1935, the Commission made its final report (Staunton Brick Co. v.

Chesapeake & Ohio Ry. Co., 210 I.C.C. 693) in which, after discussing the evidence as to certain questioned shipments and disallowing some of them for failure of proof, it concluded that certain complainants, each of whom were named, had received shipments as described and had paid the charges thereon at the rates found unreasonable in the prior reports; that they were damaged thereby and were entitled to reparation with interest "in the sums set opposite their names in the attached order". This report was accompanied by an order of the same date reciting the reports made in the case on their respective dates and directing the defendant carriers to make payment of reparation on or before December 24, 1935. The order listed the names of the complainants and the principal sum of the excessive charges paid by each and directed that the defendants should also pay interest at 6 per cent from the "respective dates the charges were paid". The amount of the interest was not calculated or set out in the order.

The defendants having failed to comply with the order directing payment of reparations, this action was brought. The defenses, set up both by demurrer and by grounds of defense under a plea of the general issue, may be stated in condensed form as follows:

(1) That the rates charged and upon which reparation was ordered were not unreasonable.

(2) That the finding of the Commission that the rates were unreasonable is void because not supported by primary findings of fact justifying such conclusion; and that the findings of fact required a determination that the rates were not unreasonable.

(3) That the final order awarding reparation does not contain the essential findings of fact necessary to support such award.

(4) That the order is void because the rates assailed had been long in effect and maintained under conditions justifying defendants' belief that the rates had the Commission's approval.

(5) That the order of the Commission is void because the Commission, previous to movement of the shipments in question, had set up certain standards by which it pronounced what would be reasonable rates for such shipments, and the rates charged did not exceed those so pronounced to be reasonable.

(6) That the order of the Commission is void because the Commission had previously found that certain of the rates involved were not unreasonable.

Defenses of a particular nature are offered as to the awards to Salem Brick Co., to Williamson & Hedgecock, Inc., and to Southern Dairies, Inc., Bassett Mirror Co., Inc., Martinsville Novelty Corp. and Virginia Mirror Co.; the nature of which will be mentioned later.

It will be noticed that the defenses as separately stated are in some measure overlapping and in the briefs submitted by counsel the argument is rather difficult to follow as applied to specific grounds of defense. In defenses Nos. 1 and 2, it is contended in effect that the rates upon which reparations were sought were not unreasonable and that the evidence before the Commission did not support the conclusion which the Commission reached but, on the contrary, required a determination that the rates assailed were not unreasonable. Little need be said of this defense. The complete record before the Commission was not introduced in evidence in this Court and the Court cannot undertake to recite its details. The evidence was apparently elaborate, however, for the report of the Commission (some 20 printed pages) discusses the volume of coal handled by the carriers, operating conditions and facilities, comparable rates, etc., as the foundation for its findings. That the Commission was not arbitrarily disposed in favor of complainants is indicated by the fact that it rejected complainants contentions as to a rate asked for by the latter as reasonable, although making a reduction in a lesser amount. Where the Commission has acted on substantial evidence before it, it is well settled that the Court cannot substitute its judgment for that of the Commission or review the evidence with a view to reaching an independent, and perhaps different, conclusion. This matter was discussed at some length in the case of City of Danville v. Chesapeake & O. Ry. et al. (Danville Hotel Co. v. Chesapeake & O. Ry. et al.), supra, recently decided by this Court, and need not be further discussed here. And see Mitchell Coal Co. v. Pennsylvania R. R., 230 U.S. 247, 257, 33 S.Ct. 916, 57 L.Ed. 1472; United States v. Louisville & N. R. R., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245; United States v. New River Co., 265 U.S.

533, 542, 44 S.Ct. 610, 68 L.Ed. 1165; Virginian Ry. v. United States, 272 U.S. 658, 663, 665, 47 S.Ct. 222, 71 L.Ed. 463.

Just what is meant by the objection that the Commission's conclusions "are not supported by primary findings of fact", is not clear. If it is meant that the Commission must first make findings of fact on which to base its conclusions, it is only necessary to say that the Court knows of no specifically prescribed form in which such findings need be made; and examination of the report shows that the Commission reviewed and set out in considerable detail the facts which lead it to the conclusion that the assailed rates were unreasonable.

■ The defense numbered (3) is that the order of the Commission did not contain the essential findings of fact necessary to support an award of damages. The case of Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691, is cited as establishing what facts are necessary to be shown. This same question was also raised and discussed at some length in the companion cases recently decided by this Court and heretofore referred to, in which it was pointed out that in Meeker v. Lehigh Valley R. Co., it was stated that it was necessary only that the findings of the Commission should show the ultimate facts on which the conclusions of the Commission were based; not a review of the evidence or of the evidential facts. What is required is pointed out in the Meeker case and the report of the Commission in the instant case fully complies with what is set out there. If the point be made that the final order, as distinguished from the reports, does not recite all of the essential findings of fact, it is only necessary to say that the final order specifically refers to the reports and in terms makes them a part of the order. It could hardly be expected that the order would recite the findings of fact in the reports.

■ It is emphasized that the report does not contain a finding of the "character and amount of the traffic out of which the claims arose"; and in defendant's brief, it is complained that the report does not show the amount of traffic involved in the reparation awards, "either by tonnage, number of cars or otherwise", and that there is no finding of the points of origin or destination of shipments to individual claimants. Apparently the defendants contend that the report should contain all of the data as to each separate shipment for which reparation was finally awarded. When it is noted that there were some sixty or more complainants in this case and hundreds of separate shipments involved, the impracticability of including this detail in the report is apparent. The Commission found the extent to which the rates from the several fields of origin to various destinations were unreasonable and directed the submission of Rule V statements showing all the details of the hundreds of shipments involved for the calculation of the reparation due each complainant. When the carriers refused to certify these statements, further hearings were had, at which the complainants were required to make proof of each shipment. The detailed information as to these separate shipments with the computation of the overcharges is contained in a bound volume with thousands of separate entries. It was obviously useless to embody this mass of material in the final report or order. The defendants were represented at the hearing at which the claims were gone over; they took exceptions to claims for various separate shipments and succeeded in having some of them eliminated. They have had complete information as to the nature and amount of the overcharge claims and have raised no question as to the accuracy of the amounts computed to be due the several claimants as set out in the final order. There is no merit in the contention that the report or final order must show the detailed figures as to each separate shipment involved.

■ The final order directs the payment of specified sums to the several complainants "with interest at six per cent from the respective dates the charges were paid". It is true that the order does not undertake to specify, in dollars and cents, the amount of this interest but its computation was a mere task in arithmetic. The order is in the usual form entered by the Commission and the necessary information as to the dates of the respective shipments was fully known to defendants. In the complaint filed in this Court, the amount representing interest is set out and its accuracy has not been questioned.

■ The grounds of defense Nos. 4, 5 and 6 are based on the theory that since the rates assailed had been long in effect

and had conformed, as the carriers believed, to standards set up by the Commission, the Commission was estopped now to hold them unreasonable and particularly to grant reparation thereon. To this is added the contention that the Commission had, at a previous time, held that certain of the rates were not unreasonable. All of the questions raised by these defenses have been discussed at length in the opinion recently filed by this Court in case of City of Danville v. Chesapeake & Ohio Ry. (Danville Hotel Co. v. Chesapeake & Ohio Ry.), previously referred to. Everything said in those cases is applicable here and disposes of the contentions here made. Nor has any question been raised in the instant case that requires explanation or extension of what was there said. For that reason, the applicable portion of that opinion [34 F. Supp. 628] is here adopted without repetition in words.

■ Defenses 7, 8 and 9 relate to claims of particular shippers. The first of these (No. 7) relates to the Salem Brick Co. It appears that this concern conducts its sales and advertising under the name of Old Virginia Brick Company. This complainant was not named in the original complaint, but in the amended complaint (filed before any hearing was had) the Old *Dominion* Brick Company was named as a complainant. It was an evident inadvertence that the words "Old Dominion" were used for "Old Virginia". At the original hearing the President of the concern testified that the actual name of the corporation was Salem Brick Company and that Old Virginia Brick Company was the name under which it conducted its sales. The real party in interest was the Salem Brick Company, which had paid the excessive charges, and the Commission considered this disclosure of the true situation as a sufficient amendment to the amended complaint, so as to treat the Salem Brick Company as a complainant in the further proceedings and to make an award in its name. The defendants now complain of this, apparently because no formal amendment of the complaint was made. It was not until the final hearing to fix the amount of reparations that the defendant raised the question that the Salem Brick Company had never been made a complainant and that its claim should therefore be denied. The Commission considered the objection to be

without merit, and I agree with that view. From the time of the original hearing, the parties knew that Salem Brick Company was the correct name of the real party in interest. There has been no duplication of awards and no dispute as to the accuracy of the award made. Nothing affecting the merits of the case occurred through failure to give formal permission to amend or failure to enter a formal order of amendment.

A further objection to the allowance of the Salem Brick Company claim is made on facts which may best be stated in the language of the Commission's final report, as follows:

"All these shipments were consigned to and delivered at Pierpont, 3 miles west of Salem and intermediate thereto. At the original hearing a *witness for defendant* showed by exhibit the tonnage delivered to the Salem Brick Company and showed also that delivery was made on Pierpont Siding, which was under the jurisdiction of the Salem agent. Moreover, *by his questions on cross-examination at the original hearing counsel for defendant disclosed that he was aware of the location of complainant's plant.* In the original reports we found that the assailed rates to Salem had been unreasonable to the extent therein noted, and, as already stated, found that the Salem Brick Company was entitled to reparation. Since Pierpont was not named in the complaint or amended complaint, however, and since it was not pressed upon our attention that Pierpont was a separate station, we made no findings in the original reports in respect to rates to Pierpont.

"Defendant was fairly informed that the rates to Pierpont were brought in issue by this complaint. Western Metals Co. v. Director General, supra [100 I.C.C. 314]. It is our opinion, therefore, that our prior findings may fairly be construed as embracing rates to Pierpont. In order that there may be no misapprehension, however, we hereby reopen no. 23817 for reconsideration on the record made at the original hearing, and we now find on that reconsideration that the interstate rates assailed in no. 23817 from the Pocahontas group to Pierpont were unreasonable to the extent they exceeded 185 cents per net ton and that the interstate rates therein assailed from the Kenova and Thacker districts to Pierpont were, prior to September 8, 1930, unreasonable to the extent they

exceeded 210 cents per net ton. [Italics ours.]"

■ The defendants contend that inasmuch as the original complaint had not assailed any rate to Pierpont and no party had been entitled to reparation on shipments to Pierpont, the Commission was without power to award reparation on shipments to that point. And it is urged that the action of the Commission, as recited in the final order, of reopening the case in order to act formally on the rate to Pierpont, was beyond the Commission's power. The contention appears to be without merit. The fact that Pierpont was the point of delivery became known to defendants at the original hearing—if they did not already know it. Defendants had contested the reduction of the rate to Salem; and when the Commission had found that rate unreasonable and ordered a reduction, there was certainly nothing which defendants could offer against an equal reduction in the rate to Pierpont, which was three miles closer to the mines than Salem. No disadvantage accrued to defendants because Pierpont was not named as a point of destination in the original complaint. It is likewise natural that the Commission should have desired that its report should leave no cause for confusion and, therefore, went through the formality of taking action to reduce the rate to Pierpont to accord with the Salem rate. It appears that the Commission acted within its power in an attempt to clarify the record in minor respects; and that defendants were not in any possible way prejudiced thereby.

■ The defense to the claim of Williamson & Hedgecock, Inc., (No. 8) is the same as the second of the defenses advanced as to Salem Brick Company. In this instance, the original complaint named this consignee as located at Martinsville. At the original hearing, it developed that while the office of complainant was at Martinsville, the coal had been consigned to and delivered at Firestone, about 7 miles from Martinsville and intermediate thereto. The Commission proceeded as described in the matter of Salem Brick Company and what has been said in relation to that matter applies here.

No. 9 of the grounds of defense is directed to the claims of Southern Dairies, Inc., Bassett Mirror Company, Martinsville Novelty Corporation and Virginia Mirror Company. These concerns were parties to the complaint filed before the Commission and therein prayed for reparation. At the original hearings held by the Commission to consider evidence as to the unreasonableness of the rates assailed and evidence that shipments had been made thereunder, these complainants did not appear and no evidence was offered showing that they had made shipments. As a result of this hearing, the report of December 19, 1932, was promulgated holding the rates unreasonable and finding that certain complainants, listed in an appendix to the report, had made shipments under the unreasonable rate and were entitled to reparation. The list did not include any of the four complainants named who had failed to offer any proof. The report found generally that the complainants named in it were entitled to reparation without fixing the amounts thereof, and directed that Rule V statements be submitted on which to base the amounts due the several claimants. The carriers refused to certify these statements and a further hearing was had for detailed proof of shipments made by various parties. At this hearing, the four complainants whose claims are now objected to did appear and proved shipments made and the amount of reparation due. On the basis of this, the final report included these four complainants among those to whom reparation was found to be due and the amount thereof was set out, along with others, in the final order.

■ The contention is made that the action of the Commission in not including these parties in its first report as among those to whom reparation was due had the effect of denying their claims; and that the later acceptance of proof from them was in effect a reopening or rehearing of the proceeding on its own motion, without any petition therefor and without notice to defendants. It is urged that the final hearing was "to determine the amount of reparation due parties under the (previous) findings in these cases", and that inquiry was limited to the amounts due to those previously found entitled to reparation. The Court cannot see its way clear to apply to the situation such technical considerations as urged here. There had in fact been no previous finding as to these four complainants except the negative action of not naming them in the first report, for the reason that they had not at that time offered proof of any shipments made. The previous "findings in these cases", as described by the Commission relate par-

ticularly to the findings of unreasonable rates. Certainly these were the important findings; and when these had been made, the real merits of the case were decided and proof of shipments made and amounts involved was merely to determine amounts. That parties did not offer this merely formal proof at the first hearing does not seem sufficient to bar their rights when it is considered that they did offer it before the final report was made and at a hearing where the defendants were represented and had full opportunity to contest it. I am unable to see wherein defendants were prejudiced. When the unreasonableness of the rate had been found, they could do nothing further than question the amounts involved in the reparations prayed for and they had full opportunity to do this.

The Commission considered the contention of defendants, but held it without merit under its rulings in previous cases, citing particularly Shelbina Milling Co. v. Chicago B. & O. Ry., 208 I.C.C. 95, in which it dealt with a similar situation, citing Phillips Co. v. Grand Trunk Ry., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774, as authority for the principle applied.

 The Court is of opinion, and so finds, that the report and order of the Commission of October 3, 1935, were made in the course of proceedings regularly conducted before the Commission and were based on substantial evidence before the Commission; and that it was within the authority of the Commission to order a reduction for the future of the rates as to which it did so order and also to award reparation based on charges found to be unreasonable in the past. That the defenses offered as to the particular claims of Salem Brick Company, Williamson & Hedgecock, Inc., Southern Dairies, Inc., Bassett Mirror Company, Inc., Martinsville Novelty Corporation, and Virginia Mirror Company are without merit and that the Commission acted within its authority in granting reparation to each of said claimants. The Court further finds that the plaintiffs have been damaged by the exaction of the unreasonable rates in the past in the manner and to the extent alleged by them and are entitled to recover the amounts prayed for respectively in their complaint.

In addition to the principal amounts of damage asserted in the complaint, the Court is of opinion to allow interest on said principal amounts at the rate of four per cent per annum from December 24, 1935, until the present date, the sum allowed as interest to be a part of the final judgment. This is in accord with the views of the Court as expressed in its separate opinion in City of Danville v. Chesapeake & O. Ry. et al. (Danville Hotel Co. v. Chesapeake & O. Ry. et al.), supra. (Nos. 3698 and 3699), in which the matter of the allowance of interest and the rate thereof were fully discussed, and which is equally applicable in this case.

Plaintiffs, pursuant to the right given by the statute, 49 U.S.C.A. § 16 (2), have asked an allowance for attorneys fees in a sum not less than $12,000. The situation here is similar to that in cases Nos. 3698 and 3699, in which the considerations entering into the allowance of such fees were discussed. In view of what was there said, I think the allowance asked is too large and should not exceed $7,000, which latter amount will be allowed.

To clarify the record and prevent any misunderstanding, it is here stated that all objections made during the trial to the introduction of evidence and upon which action of the Court was reserved have been overruled and all evidence presented was considered pertinent and was given consideration.